**SUNSET LAMP CORP., Plaintiff,**

v.

**ALSY CORP., Alsy Manufacturing Inc., Cycle II Corp., and S & M Industries Corp., Defendants.**

**No. 88 Civ. 3443 (MBM).**

United States District Court,
S.D. New York.

Nov. 2, 1988.

Arthur H. Seidel, Nancy A. Rubner, Mark E. Bailey, Seidel, Gonda, Lavorgna & Monaco, P.C., Philadelphia, Pa., for plaintiff.

Robert L. Sherman, Ruskin, Schlissel, Moscou, Evans & Faltischek, Mineola, N.Y., for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Sunset Lamp Corp. and defendants Alsy Corp., et al.[1] compete in the manufacture and distribution of table and floor lamps. Plaintiff sues for alleged infringement of the copyright on its banana leaf design for table and floor lamps.[2] Plaintiff secured copyrights in May 1987 for table and floor lamps ornamented with a banana leaf design created by an artisan in plaintiff's employ. In this action plaintiff Sunset claims that beginning in or about May 1988, Alsy manufactured and distributed lamps that infringed both the table and floor models of plaintiff's banana leaf lamp, and that bore a false copyright

---

1. Defendants have not sought to distinguish the functions of their various corporations, which are referred to herein collectively as "Alsy."

2. Plaintiff sues as well under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), alleging that Alsy's copying of the lamps in question constitutes trade dress infringement and false description of origin. The claim is frivolous. Basic to such a claim is a showing that the consuming public associates a particular trade dress with a particular source rather than with the product alone, as plaintiff has acknowledged. *Venetianaire Corp. of America v. A and P Import Co.*, 302 F.Supp. 156, 160 (S.D.N.Y. 1969), *aff'd* 429 F.2d 1079 (2d Cir.1970). There was no evidence whatever to prove that the lamps at issue have a configuration that has become associated in the public's mind with plaintiff's company. *Cf., LeSportsac, Inc. v. K-Mart Corp.*, 754 F.2d 71 (2d Cir.1985).

notice in Alsy's name. Sunset charges that such manufacture and distribution infringed its copyrights in violation of 17 U.S.C. § 501, and constituted unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York State law. Plaintiff seeks an injunction, damages and attorneys' fees. By agreement of the parties, the record of the two hearings conducted on May 31 and July 14, 1988 will be treated as both the preliminary injunction hearing and the trial on the merits pursuant to Rule 65(a)(2), Fed.R.Civ.P.

At issue in this case is whether Sunset's design for the lamps can be protected by the copyright laws and whether Sunset's notice of copyright was omitted from more than a relatively small number of copies of its lamps such that any copyright would become invalid. I have found that plaintiff's banana leaf design is copyrightable. However, because the evidence at trial showed that plaintiff omitted the required copyright notice from more than a relatively small number of its table lamps and then failed to take reasonable steps to add notice to all copies distributed to the public after the omission was discovered, plaintiff's copyright on its table lamps is invalid. Accordingly, plaintiff is entitled to an injunction and damages only with respect to defendant's infringement of the copyright on its floor lamps.

In addition, plaintiff claims that defendant's placement of a copyright notice on both its table and floor lamps constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and New York State law. This claim is sustained. Defendant's distribution of lamps bearing a false copyright notice is also enjoined, as set forth below.

### I.

Beginning in 1986, plaintiff Sunset began to upgrade its line of lamps to include more original designs. One of these was a banana leaf design created by Asta Ingle, a Sunset employee, who drew it based on her particular rendering of a banana leaf plant she saw from the window of her sister's house. The leaves in her design are some-

what elongated versions of natural banana leaves, and intertwine in a fashion not found in nature. She adapted her drawings for both a table and a floor lamp, which were marketed beginning in April 1987 and for which copyrights were registered on May 7, 1987. Copyright notices were contained on gummed labels affixed to the base of each lamp. In addition, Sunset hung a tag, attached by a string to the harp of the lamp, that carried a copyright notice on the back.

It is undisputed that Alsy had access at the latest by January 1988 to both the table and floor models of Sunset's lamps when an Alsy employee saw and bought such lamps at a California department store. However, Alsy avers that neither model bore a copyright notice. Alsy contends that it then created its own banana leaf motif for a table and a floor lamp, and proceeded to market them with copyright notices in the name of defendant S & M Industries stamped into the base of each lamp. Defendant's table lamp bears a copyright date of 1988; its floor lamp bears a copyright date of 1987. The person alleged to have been the creator of Alsy's banana leaf table and floor lamps died just before the first hearing in the case. No drawing or other evidence was presented to substantiate a claim of independent creation.

Defendant Alsy took the position at trial both that Sunset's banana leaf design was not copyrightable, a position somewhat at odds with its own placement of a copyright notice on the Alsy version of the banana leaf lamp, and that Sunset had in fact distributed significant numbers of banana leaf lamps without copyright notices affixed in a manner sufficient to give notice under the copyright laws. Such a failure would, in effect, place the design of the lamp, even assuming it to have been copyrightable, in the public domain. In a dramatic illustration of this argument, Alsy introduced into evidence at the conclusion of the May 31 hearing a table lamp purchased at the Fortunoff's department store in Westbury, New York, still in its original heat-sealed transparent plastic wrapping.

The gummed copyright label that plaintiff claimed to affix to the base of every lamp that left its factory was nowhere to be seen.

At the continued hearing on July 14, plaintiff Sunset introduced evidence reflecting its practice of sticking gummed labels on the base of every banana leaf lamp assembled on its production line, and inspecting each lamp to assure that the label has been affixed. At the same time, the testimony showed that plaintiff's table lamps pass through heat when they are "shrink wrapped" in plastic; plaintiff's floor lamps are not so wrapped. This heat processing of the table lamps follows placement of the gummed labels, and apparently can dislodge a gummed label affixed at an earlier stage of production to the bottom of a lamp. Also, the heat processing follows the inspection of the table lamps. Thus, even if a gummed label is placed on every table lamp, some can come off without detection. Although plaintiff has acknowledged that some of its table lamps, but not its floor lamps, have entered the stream of commerce without the gummed copyright labels, the only apparent difference in processing that would explain this phenomenon is that table lamps are subjected to heat treatment. However, plaintiff has done nothing to change its quality control procedures to inspect table lamps after heat processing.

Plaintiff has claimed that the gummed label "has been omitted from no more than a small number of copies" of its table lamp, and from no copies of its floor lamp, such that copyright protection has not been lost. 17 U.S.C. § 405(a)(1). Indeed, plaintiff insists the record shows that only two of more than 125 inspected table lamps failed to carry the gummed label. This calculation can be made only by (i) rejecting outright the affidavits of defendant's executives asserting that they purchased at least one of plaintiff's table lamps and inspected several others at the Bullock's department store in Los Angeles bearing no copyright sticker; (ii) disregarding the deposition evidence secured by plaintiff reflecting that, of the 30 table lamps in stock at the Fortunoff's department store in Westbury, New York at the time this case was tried, three did not carry the sticker; and (iii) overlooking the affidavit of plaintiff's employee, Helga Dzik, who allegedly inspected 31 table lamps at plaintiff's warehouse in Commerce, California and found one without a sticker, confirming that some table lamps must have left the factory without stickers. The evidence did show that, at the time of the deposition and afterward, plaintiff took steps to place the sticker on the table lamps at Fortunoff's from which it had been omitted, and to distribute stickers to other stores whose stock might include lamps from which stickers had been omitted. However, given that the sample of lamps at Fortunoff's suggests plaintiff had been distributing 10% of its table lamps without proper copyright notice, that would mean that plaintiff distributed about 314 of 3,144 table lamps without proper copyright notice by the beginning of May 1988, shortly before this action was begun.

Although one of defendant's executives claimed to have bought one of plaintiff's floor lamps and seen others without a copyright notice, I feel constrained to reject such evidence in view of more convincing evidence, as follows: thoroughly credible witnesses testified that copyright stickers were placed on all banana leaf lamps at plaintiff's factory; the manufacturing and wrapping process for floor lamps includes no stage at which they are heated or otherwise treated in a fashion to dislodge the gummed labels; no floor lamp without a copyright notice has been discovered since this litigation was commenced; and no evidence from neutral third parties such as store personnel was presented to substantiate defendant's claim that floor lamps without copyright notices entered the stream of commerce earlier.

## II.

■ "Reduced to most fundamental terms, there are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff, and copying by the defendant." 3 M. Nimmer, *Nimmer on Copyright*, § 13.01 (1988). Copying can be

proved by access and substantial similarity, *Id.*, at § 13.01[B], and defendant has conceded access in this case. Accordingly, although I understand defendant to deny similarity and thus treat that issue below, its primary defenses are addressed to plaintiff's ownership of a valid copyright: first, that the banana leaf design at issue cannot be copyrighted because it is part of a useful work; second, that the design cannot be copyrighted because it merely copies a form from nature and thus is not sufficiently original to warrant protection; third, that even if a valid copyright was secured, it was invalidated as the result of plaintiff's distribution of more than a relatively small number of copies of the lamps without proper copyright notice. Attached to the complaint are plaintiff's copyright certificates VA 263–619 and VA 263–610 covering the table and floor lamps, respectively. These are prima facie evidence in plaintiff's favor on the first two issues, 17 U.S.C. § 410(c); *see also,* 3 Nimmer at § 13.01[A], although the effect of the presumption thus created is merely to shift the burden to defendant to challenge copyrightability with the "'mute testimony' of the forms" in dispute resolving the issue. *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985).

■■■ That the design appears on a useful object such as a lamp is no bar to a valid copyright so long as the design is physically or conceptually separable from the object on which it appears. *Kieselstein–Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989, 993 (2d Cir.1980). Here it takes no great feat of ratiocination to separate the concept of the banana leaves from the concept of the lamps. Accordingly, I find that the design is copyrightable in this respect.

■■■ Nor can I accept the argument that the design is a mere imitation of nature and therefore not copyrightable. As noted above, the banana leaves rendered by plaintiff's artisan are not simply a copy of leaves found in nature. They are longer than natural leaves, their veins and notches are stylized rather than copied from nature, and they twist and intertwine in a way not found in nature. Contemplating the roll call of mundane and imitative objects that have qualified for copyright protection—plastic flowers, *Prestige Floral, S.A. v. California Col,* 201 F.Supp. 287 (S.D.N.Y.1962); a ceramic dog in the "show position," *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 193 F.2d 162 (1st Cir. 1951), *aff'd* 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952); a vegetable design, *Scarves by Vera, Inc. v. Fabrex Corp.,* 129 U.S.P.Q. 395 (S.D.N.Y.1961), and the like—Professor Nimmer concluded that, "a very modest quantum of originality will suffice." 1 Nimmer at § 2.08[B]. By that standard, the banana leaves at issue here qualify for protection. *Thomas Wilson & Co. v. Irving J. Dorfman Co.,* 433 F.2d 409, 411 (2d Cir.1970).

■■■ Defendant's most substantial challenge to plaintiff's copyright arises from the distribution of certain of plaintiff's table lamps without gummed copyright labels affixed to the bottom.[3] Because the Copyright Act requires that published copies of a protected work bear notice of copyright, publication without the required notice will invalidate the copyright unless the omission occurs only in a relatively small number of copies distributed to the public, or unless the work is registered and a reasonable effort is made to add notice to all copies that are distributed to the public. The proof at trial showed that three of the 30 table lamps inspected at the Fortunoff's store did not have copyright labels on the base, and that one of 31 table lamps inspected at plaintiff's own factory did not have such labels. Although there was no substantial sample taken of the 3,144 table lamps produced and shipped by plaintiff from May 1987 through April 1988, the evidence certainly demonstrates that somewhere between 3% and 10% of plaintiff's table lamps have reached consumers without copyright labels on the

---

**3.** Defendant has argued also that use of stick-on labels and their placement on the underside of the lamps is inadequate notice. That argument is meritless. 37 C.F.R. § 201.20(i)(2); *Royalty Designs, Inc. v. Thrifticheck Service Corp.,* 204 F.Supp. 702 (S.D.N.Y.1962).

base. Although 17 U.S.C. § 405(a) does not define what constitutes a "relatively small number of copies," courts have found that 2.4%, or 2,500 of 102,500 units, is more than a "relatively small number," *Donald Frederick Evans and Assoc. v. Continental Homes, Inc.*, 785 F.2d 897 (11th Cir. 1986), and I would thus have no trouble finding that 10% is as well.

 Of course, plaintiff falls back on assertions that the "hang tags" are sufficient notice, but the applicable regulations do not support such reliance. As to three-dimensional pictorial, graphic or sculptural works, the regulations prescribe notice "affixed directly or by means of a label cemented, sewn, or otherwise attached durably, so as to withstand normal use, to any ... base...." 37 C.F.R. § 201.20(i). Hang tags are permissible only "[w]here, because of the size or physical characteristics of the material in which the work is reproduced in copies, it is impossible or extremely impracticable to affix a notice to the copies directly or by means of a durable label...." That is not the case here, where plaintiff's own use of gummed labels attests to both the possibility and practicability of using a durable label. Thus, the regulations do not permit reliance on hang tags when other prescribed methods are possible and practicable, as they are here.

 Although the evidence shows that plaintiff has omitted the required notice from more than a relatively small number of copies, the statute provides alternatively that such omission of notice does not invalidate a copyright if the work is registered and "a reasonable effort is made to add notice to all copies ... that are distributed to the public ... after the omission has been discovered." 17 U.S.C. § 405(a)(2). Such a reasonable effort would have to include both the lamps in plaintiff's own possession and those that have been distributed to retailers but not yet sold. *Shapiro & Son Bedspread Corp. v. Royal Mills Assoc.*, 764 F.2d 69, 73–74

(2d Cir.1985). *See also, M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421 (4th Cir.1986).

 As to the latter, plaintiff has proffered evidence tending to show that it sent gummed labels to retailers with instructions to place them on any lamps that did not already bear them. Those labels could be used only on display models of plaintiff's table lamps because the lamps packaged for sale to consumers are heat sealed in "shrink wrap" plastic; unless a retailer opens each carton before sale and tears the heat sealed plastic, the gummed labels cannot be affixed. Although I might well have found that the sending of these labels was a "reasonable effort" under the circumstances in relation to lamps already shipped, considering particularly how plaintiff's table lamps are packaged, I read the section in question to require that plaintiff at least take reasonable steps to prevent the problem from recurring. Here, however, plaintiff's quality control supervisor testified that the table lamps are still inspected before but not after they enter the heat tunnel to be "shrink wrapped." Tr. 221–23. That is to say, even after plaintiff was put on notice that some of its table lamps were arriving in stores without the gummed labels that are supposed to be affixed to the base of each lamp, and even after it must have realized that the heat treatment may have dislodged some of the labels, it did nothing to assure that it could intercept table lamps from which labels had fallen off before they entered the stream of commerce. From the evidence, plaintiff's factory is still turning out table lamps without the required notice at precisely the same rate as before this action started. Plaintiff's failure to change its inspection procedures is a failure to make "a reasonable effort ... to add notice to all copies ... that are distributed to the public ... after the omission has been discovered." 17 U.S.C. § 405(a)(2).[4]

 The issue of infringement as to the floor lamps is relatively easier. The

---

**4.** Plaintiff cites the "tradition of construing the notice requirement liberally," *Wales Indus., Inc. v. Hasbro Bradley, Inc.,* 612 F.Supp. 510, 519 (S.D.N.Y.1985) (Weinfeld, J.), and urges that it

is based upon equity's distaste for forfeitures. Whatever equitable principles I might be free to apply so as to cure defective notice, Congress has prescribed the method for curing absence of

background and portrayal of the leaves is exactly the same, as is over-all shape of the lamps—an enlarged baseball bat with the handle pointed upward. Defendant's lamp appears as a slightly swollen version of plaintiff's, and is otherwise a slavish and blatant knock-off. The test to determine infringement is whether the allegedly infringing and infringed works are substantially similar to the eye of an ordinary observer. *Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 (2d Cir.1977). I find that defendant's floor lamp infringes plaintiff's copyright.

### III.

Plaintiff has also claimed that Alsy's placement of a copyright notice on the base of its own banana leaf lamps is itself actionable under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and entitles plaintiff to an injunction. I agree. *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 37 (2d Cir.1982). False designation of origin can include false designation of copyright, where the copyright may enhance the cachet of the product as an original. This is true not only for the floor lamp but also for the table lamp, which copies plaintiff's lamp with minor variations. The leaves on defendant's table lamp twist somewhat less than those on plaintiff's; their notches and veins are slightly more regular and pronounced, and fewer in number, than the corresponding banana leaf features on plaintiff's table lamp; the base of plaintiff's table lamp is shaped like a watermelon while the base of defendant's is shaped like a strawberry (albeit a strawberry that is the same size as plaintiff's watermelon). However, when an ordinary observer looks at the two table lamps, "the dissimilarities appear quite obviously to be the result of a studied effort to make minor distinctions, as evidenced by the use of virtually identical color schemes giving their overall appearance striking similarity." *Peter Pan Fabrics, Inc. v. Candy Frocks, Inc.*, 187 F.Supp. 334, 336 (S.D.N.Y.1960).

The resulting consumer deception is not mitigated merely because defendant asserts a copyright in an article, the table lamp, which I have found to be in the public domain, rather than in an article that is itself the subject of a copyright. It would seem obvious that if defendant's table lamp would infringe a valid copyright, as I find it would, then defendant's work is not sufficiently original to qualify for copyright protection when the lamp from which it was copied turns out to be in the public domain. Accordingly, and in view of defendant's conceded access to plaintiff's lamp, defendant cannot assert a valid claim of copyright in its own table lamp, and the consequent false designation of the goods violates the Lanham Act.

### IV.

Plaintiff demands an injunction barring further distribution of the defendant's lamps, and seeks damages pursuant to 17 U.S.C. § 504(b) consisting of its actual damages and Alsy's profits, as well as costs and attorneys' fees pursuant to 17 U.S.C. § 505. In view of defendant's infringement of plaintiff's copyright in the floor lamp, and defendant's violation of the Lanham Act with respect to its copyright notice on both lamps, plaintiff is obviously entitled to the injunction and damages. Defendant argues that even if infringement is found, it was an innocent infringer, and accordingly costs and attorneys' fees should not be awarded. Although it is conceivable that Alsy purchased one of plaintiff's table lamps without a copyright sticker, and is therefore an innocent in-

---

notice. When a plaintiff fails to follow the prescribed method, which is merely "reasonable effort," it cannot demand that a court simply disregard the statute. I should emphasize also that defendant has taken the position that it was unaware of plaintiff's copyright, and there is no reason to disbelieve that assertion, at least as to the table lamps. Therefore, as to the table lamps, we are not dealing with the situation presented by "a barefaced infringer [seeking] to

invoke an innocent deviation from the letter that could not in the slightest degree have prejudiced him or the public." *National Comics Pubs. v. Fawcett Pubs.*, 191 F.2d 594, 603 (2d Cir.1951). *See also, Uneeda Doll Co. v. Goldfarb Novelty Co.*, 373 F.2d 851, 854 (2d Cir.), *cert. denied*, 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56 (1967); *Dan Kasoff, Inc. v. Novelty Jewelry Co.*, 309 F.2d 745 (2d Cir.1962).

fringer as to the table lamps, it is simply not conceivable that the floor lamp Alsy bought also did not have a sticker. To the extent defendant's testimony was to the contrary, I decline to credit it.

For the above reasons, I find that Alsy was a willful infringer of plaintiff's copyright in the floor lamp, and that an award of a reasonable attorneys' fee is appropriate. I will fix that fee in a separate order following submission of proof as to the time and expenses of plaintiff's counsel. However, in no event will that fee include any compensation for time or disbursements past the initial hearing in this case, the second hearing having been necessitated entirely by plaintiff's failure to present proof relating to Alsy's allegation that plaintiff's lamps were distributed without copyright notices. Plaintiff was · made aware specifically of that allegation before the first hearing and its failure to present proof at that hearing burdened both the court and the opposing party.

### V.

Defendant is found to have infringed plaintiff's copyright VA 263–610 with its banana leaf floor lamps, and to have violated Section 43(a) of the Lanham Act with respect to the copyright notice on both its banana leaf table lamps and floor lamps. Defendant is permanently enjoined from further distribution of the infringing floor lamps, and the table lamps bearing copyright notices. Plaintiff will be awarded its lost profits and defendant's profits as to the floor lamps, and a reasonable attorney's fee, in a further order to be issued after submission of appropriate proof. Counsel will attend a conference on November 29, 1988 at 5:15 p.m. in Courtroom 2704 to determine the procedure for submitting such proof.

The above shall constitute the findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P.

SO ORDERED.