**SUNSET LAMP CORP., Plaintiff,**

v.

**ALSY CORP., Alsy Manufacturing Inc., Cycle II Corp. and S & M Industries Corp., Defendants.**

**No. 88 Civ. 8443 (MBM).**

United States District Court,
S.D. New York.

Oct. 22, 1990.

---

Arthur H. Seidel, Nancy Rubner–Frandsen, Seidel, Gonda, Lavorgna & Monaco, P.C., Philadelphia, Pa., for plaintiff.

Robert L. Sherman, Ruskin, Schlissel, Moscou, Evans & Faltischek, P.C., Mineola, N.Y., for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant has objected to the Memorandum and Order dated June 7, 1990 of the Honorable Leonard Bernikow, United States Magistrate, permitting plaintiff to seek, as damages for copyright infringement of a floor lamp, the value of lost sales on non-infringed items marketed as part of the line of merchandise that included the infringed item. For the reasons set forth below, the Memorandum and Order of the Magistrate is affirmed, but with the admonition that plaintiff may be assessed costs and attorneys fees if it fails to present credible evidence demonstrating a factual basis for recovering damages under this theory.

### I.

The facts of this case are set forth in detail in an earlier reported opinion at 698 F.Supp. 1146, familiarity with which is assumed. In brief, the plaintiff, Sunset Lamp Corp., and defendants, Alsy Corp., *et al.*, compete in the manufacture and distribution of table and floor lamps. In May 1987, Sunset secured copyrights for table and floor lamps ornamented with a banana leaf design. Sunset claimed that beginning in or about May 1988, Alsy manufactured and distributed lamps that infringed both the table and floor models of the banana leaf lamp, and that bore a false copyright notice in Alsy's name. Sunset charged that such manufacture and distribution infringed its copyright in violation of 17 U.S.C. § 501, and constituted unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and New York State law. In the earlier opinion, it was determined, *inter alia*, that Alsy had willfully infringed Sunset's copyright with respect to the floor lamp. However, because the evidence at trial showed that Sunset omitted the required copyright notice from more than a relatively small number of its table lamps and then failed to take reasonable steps to add notice to all copies distributed to the public after the omission was discovered, the copyright on the table lamp was declared invalid. After the parties were unable to agree on a method of presenting the damages issue, the matter was referred to Magistrate Bernikow to determine and report.

Not surprisingly, after referral to the Magistrate, counsel for the opposing parties disputed the method for calculating both damages to Sunset and profits of Alsy allegedly resulting from Alsy's infringement of the floor lamp. The principal dispute involved Sunset's contention that it was entitled to recover as damages lost sales on its entire line of merchandise, allegedly resulting from Alsy's infringement of the floor lamp. Sunset's banana leaf floor lamp was part of a new line of origi-

nal designs, *see Sunset Lamp Corp. v. Alsy Corp.*, 698 F.Supp. at 1149, which Sunset contends was intended as a breakthrough or "door opener," to enable the company to sell its entire product line through major department store chains, something it had not previously achieved. *See* Sunset's Reply to Alsy's Objections to Magistrate's Memorandum and Order at 6–7. According to Sunset, it is common practice in the lamp business for department stores to purchase an entire line from a manufacturer, and defendants' sale of an infringing version of the floor lamp at a lower price disrupted Sunset's plans to penetrate this market. Claiming that it lost a major market advantage as a result of Alsy's infringement of the floor lamp, Sunset seeks to establish its damages based on those accounts in which it successfully sold the entire Sunrise line. *See* Plaintiff's Supplemental Memorandum of Law on the Issue of Damages at 3–4 & n. 2.; Plaintiff's Memorandum of Law on the Issue of the Appropriate Monetary Amount to be Awarded at 12.

Alsy contends that Sunset's inability to sell other items in its line was due entirely to factors other than the infringement of the floor lamp. *See* Defendant's Objection to the Magistrates Memorandum and Order at 7. After the exchange, over a period of approximately 18 months, of numerous briefs and letters discussing each side's contentions as to the scope of damages, the Magistrate issued a Memorandum and Order, dated June 7, 1990, which held that Sunset may expand the scope of its damage request, subject to proof at trial, to include lost sales on other items in the Sunrise line.

Pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631–639 (1988), the district court retains ultimate responsibility for a matter referred to a magistrate. 28 U.S.C. § 636(b)(1)(C). It was determined in a conference telephone call among counsel for the respective parties and the Magistrate that objections to the June 7, 1990 order were to be filed by June 25, 1990. Alsy filed a timely objection to the Magistrate's Memorandum and Order.

II.

Section 504 of the Copyright Act provides for the recovery of "actual damages suffered ... as a result of the infringement."

Actual damages consist "primar[ily]" of "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir.1986) (citing 3 Nimmer on Copyright § 14.02 at 14–6 (1st ed. 1986), *on remand*, 670 F.Supp. 1133, 1138 (E.D.N.Y.1987), *aff'd*, 862 F.2d 304 (2d Cir.1988) (table)). However, the scope of actual damages is not to be "narrowly focused." *Id.*

■■■ To prove the amount of damages suffered as a result of the infringement, the copyright owner may rely on indirect evidence. *Fitzgerald*, 807 F.2d at 1118. For example, the copyright owner may recover "the profits which ... [it] might have earned were it not for the defendant's infringement," *id.* (citing *Kenbrooke Fabrics Inc. v. Holland Fabrics Inc.*, 602 F.Supp. 151, 155 (S.D.N.Y.1984)), and "is competent to testify as to the extent to which the copyright's value has been injured or destroyed by defendant's action." *Id.* At the same time, actual damages must bear a "necessary, immediate and direct causal connection" to the defendant's infringement. *Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 509 (2d Cir.1977). Furthermore, courts will not allow speculation as to the amount of actual damages suffered. *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir.1985).

Although there do not appear to be any reported copyright cases that have allowed, as actual damages for infringement, lost sales on non-infringed items, neither does there appear to be any case that forbids such recovery as a matter of law. Additionally, a Supreme Court case under the Copyright Act of 1909, *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952), suggests that the evidence to prove actual damages is not limited to evidence showing lost sales on the infringed product. In

*Woolworth*, the Supreme Court decided only the scope of the district court's discretion in awarding statutory damages instead of the lesser amount of the infringer's proven profits. However, in commenting on the district court's decision to exclude evidence of actual damages because it was granting only statutory damages, the Supreme Court noted:

> "Respondent proved loss of some customers and offered, but was not allowed, to show complaints from sales outlets about the Woolworth competition, decline in respondent's sales, and eventual abandonment of the line with an unsalable stock on hand. The trial judge excluded or struck most of this testimony on the ground that authority to allow statutory damages rendered proof of actual damages unnecessary. It might have been a better practice to have received the evidence, even if it fell short of establishing the measure of liability; for when recovery may be awarded without any proof of injury, it cannot hurt and may aid the exercise of discretion to hear any evidence on the subject that has probative value."

*Id.* at 230–31, 73 S.Ct. at 224.

■ Although the above discussion is dictum, it suggests that the scope of actual damages is limited only by the requirement that the evidence prove a relationship between the alleged damages and the defendant's infringement.

■ The recent case of *Business Trends Analysts v. Freedonia Group Inc.*, 887 F.2d 399 (2d Cir.1989) suggests that although a plaintiff must prove the connection between the infringement and the alleged damages, it is not barred as a matter of law from recovering damages encompassing lost sales on non-infringed items. The litigation in *Business Trends* arose out of the competition between two market forecasting groups—plaintiff, Business Trend Analysts Inc. ("BTA"), and defen-

dant, The Fredonia Group ("TFG"). Both companies were formed from the breakup of the Predicasts Research Group and each sought to exploit for itself the predecessor organization's goodwill and customer base. BTA alleged that TFG had infringed its robotics industry report and then had offered the infringing study to prospective customers for one tenth of the price charged by BTA. TFG had initially charged its customers the same price as that charged by BTA, but later cut the price in order to expose as many potential customers as possible to its work. In effect, defendant had intended the infringing product to be its "door opener" for entry into the market.

The Court of Appeals agreed with the district court's finding that TFG had infringed the BTA study. *Id.* at 403. The Court also agreed that plaintiff's proof at trial of actual damages was unconvincing and that statutory damages were unavailable because of BTA's failure to register the copyright within three months of publication, as required under 17 U.S.C. § 504(c). *Id.* at 404.[1]

However, to avoid limiting plaintiff's recovery to defendant's modest cash profits on the infringing study, given the lack of proof of actual damages and the unavailability of statutory damages, the district court had allowed recovery of additional profits based on the theory that the infringement resulted in "good will and market advantage" to TFG that could be calculated as the difference between the regular price and the discounted price for the infringing study multiplied by the number of infringing reports sold. *Business Trends Analysts v. Freedonia Group, Inc.*, 700 F.Supp. 1213, 1232. The district court found additional support for its theory in *Deltak, Inc. v. Advanced Systems*, 767 F.2d 357, 361–363 (7th Cir.1985), which defined profits to include total acquisition

---

1. Although it rejected the plaintiff's proof of actual damages, the district court's opinion characterized those damages as including "lost sales revenues or *other competitive injury.*" See *Business Trend Analysts v. Freedonia Group, Inc.*, 700 F.Supp. 1213, 1231 (S.D.N.Y.1988) (em-

phasis added). That is to say, the district court had agreed to consider proof of "other competitive injury," although ultimately it found unconvincing the proof that was submitted to show such injury.

costs of the copyrighted work that were avoided by the defendant as a result of its infringement. 700 F.Supp. at 1238.

On appeal, the Court rejected both approaches to calculating defendant's profits as "artificial," 887 F.2d at 405, but stated:

"[W]e emphasize that we are not rejecting as a matter of law a view of 'profits' under Section 504(b) that might include enhanced good will or market recognition. We hold only that the proof in the instant case is inadequate to support such an award."

*Id.* at 407.

Noting that TFG's President had admitted that discount sales of the infringing study enhanced the sales of subsequent non-infringing studies, the Court suggested that "[h]ad this issue been pursued and purchasers of the infringing study been matched with purchasers of the later study at proven prices, BTA might well have argued that revenues from subsequent sales were 'profits' under Section 504(b)."

In essence, the *Business Trends* panel left open the possibility of recovering a defendant's profits derived from the sale of non-infringing goods provided that the copyright owner could establish the necessary causal relationship between those profits and the infringement. In responding to defendant's contention that an award of profits based on "enhanced good will" and "market recognition" is impermissible because those factors inherently are not quantifiable, the Court wrote that:

"[W]e see no legal barrier to such an award ... so long as the amount of the award is based on a factual base rather than 'undue speculation.' *Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467, 470 (2d Cir.1985). Although we recognize that proving the value from an infringing product used to enhance commercial reputation may be difficult, we are unpersuaded that the difficulty is so universal

that an award for such gains may never be made as a matter of law."

*Business Trends,* 887 F.2d at 404.

Although *Business Trends* discussed the scope of "profits" under section 504, the logic of its discussion of causation and undue speculation is relevant to the scope of "damages" under the same section. *Business Trends* emphasizes the broad scope of compensation that may be sought under the Copyright Act and merely limits the extent of actual recovery to amounts proved to have resulted from a defendant's infringement, as demonstrated by credible evidence. The recovery cannot be based on an "artificial" theory of damages such as that utilized in *Deltak* or on "speculation" rather than credible evidence. *See Goldenberg v. Doe,* 731 F.Supp. 1155, 1159–60 (E.D.N.Y.1990) (comedian could not recover for lost ticket sales to live performances allegedly resulting from defendant's infringement of videotape where he failed to show by a preponderance of the credible evidence that poor turnout was attributable to defendant's conduct); *Williams v. Arndt,* 626 F.Supp. 571, 582 (D.Mass.1985) (declining to award plaintiff damages from lower attendance at seminars allegedly caused by defendant's infringement of manual, absent a "substantial basis" in the evidence).

In this case, plaintiff claims that the floor lamp was intended as a "door opener" for its entire line of lamps and that the infringement of that item by Alsy directly diminished its sales of other lamp models. Plaintiff claims that it will be able to show at trial its lost profits on other items that are directly attributable to Alsy's infringement of the floor lamp. At this stage, such a showing appears difficult, but not inconceivable.[2] Plaintiff will have to demonstrate by credible evidence a relationship between sales of non-infringed items and sales of the infringed floor lamp, and fur-

---

**2.** For example, Sunset may produce testimony from a purchaser at a department store that it canceled an order for many items in the Sunset line upon becoming aware that Alsy produced an item nearly identical to the Sunset banana leaf floor lamp. *Cf. Manufacturers Technologies, Inc. v. CAMS, Inc.,* 728 F.Supp. 75, 80

(D.Conn.1989) (finding customer testimony of cancelled orders and marketplace perceptions that defendants had actually originated infringed product as "very compelling" evidence of relationship between defendant's infringement and plaintiff's actual damages).

ther show which sales were prevented as a result of defendants' infringement. The requirement that the amount of damages allegedly suffered by the plaintiff bear a "necessary, immediate and direct causal connection" to the infringement, *Lennon*, 554 F.2d at 509, will prevent Sunset from achieving a windfall from Alsy's infringement of the floor lamp.

Furthermore, Sunset will need to show that amount specifically rather than rely on speculation. If there is no evidence to establish the amount of such damages, proof merely that there were such damages will not support an award. *See Business Trends*, 887 F.2d at 407.

Although I will allow plaintiff to proceed with its theory of damages,[3] should plaintiff fail to present substantial credible evidence showing a basis for its claim that damages from the infringement include lost sales on non-infringed items, an adequate award of costs to the defendant may well be appropriate. Plaintiff is further admonished that any third party witnesses to be relied upon to establish its damage theory must be interviewed and the basis for their testimony established to plaintiff's satisfaction before the expense of a deposition is incurred. Finally, plaintiff is reminded that its damage theory must be based solely on the infringement of the floor lamp, the table lamp having been found unprotected.

SO ORDERED.

---

3. In Magistrate Bernikow's Memorandum and Order, the conclusion states that "plaintiff may expand the scope of its damage request to include lost sales and defendants' profits on other items of the Sunrise line." It is presumed that the reference to the "defendants' profits" refers to defendants' profits from other items in the Alsy line as a result of its infringement of the Sunset floor lamp. The recovery of Alsy's profits that are proved to be directly attributable to its infringement of the floor lamp is of course explicitly allowed by *Business Trends*.