**ENCYCLOPEDIA BROWN PRODUCTIONS, LTD. and Howard David Deutsch, Plaintiffs,**

v.

**HOME BOX OFFICE, INC., Defendant.**

**ENCYCLOPEDIA BROWN PRODUCTIONS, LTD. and Howard David Deutsch, Plaintiffs,**

v.

**AMERICAN INTERNATIONAL CABLEVISION INDUSTRIES, INC., Cablevision Systems Corp., Comcast Corp., Cox Cable Communications, C–TEC Cable Systems, Simmons Communications, Sutton Capital Associates, Inc., Tele-Communications, Inc., Time Warner, Inc., and Warner Cable Communications, Inc., Defendants.**

Nos. 91 Civ. 4092(PKL), 93 Civ. 1407(PKL).

United States District Court, S.D. New York.

Sept. 24, 1998.

Schlam Stone & Dolan, New York City (Richard H. Dolan, Jeffrey M. Eilender, of counsel), for plaintiffs.

Patterson, Belknap, Webb & Tyler LLP, New York City (Kim J. Landsman, David G. Jacoby, of counsel), for defendants.

### *OPINION AND ORDER*

LEISURE, District Judge.

Plaintiffs Encyclopedia Brown Productions, Ltd. ("EBP") and Howard David Deutsch, the president and controlling shareholder of EBP, bring these consolidated actions alleging copyright infringement and various pendant state law claims against defendant Home Box Office, Inc. ("HBO"), a cable television programmer, and various cable television system operators (the "cable operator defendants"). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants move for partial summary judgment with respect to plaintiffs' claims for damages and plaintiffs' allegation that the cable operator defendants constitute willful infringers.

For the reasons stated in this Opinion, defendants' motion for partial summary judgment is GRANTED in part and DENIED in part.

### BACKGROUND

The Court presumes familiarity with the facts set forth in its Opinion and Order, dated August 24, 1994, issued in connection with this action. In brief summary, EBP and HBO entered into an agreement, dated March 10, 1988 (the "Agreement"), granting HBO an option for production and licensing of an hour-long pilot television program (the "Pilot") based on Encyclopedia Brown, a character in a series of children's books. The Agreement provides HBO with additional options for production of further such television programs.

Following HBO's exercise of the option for the Pilot, EBP produced, delivered and licensed the Pilot to HBO in exchange for payment of a $300,000 fee. Under the Agreement, HBO's right to distribute the Pilot to cable system operators for viewing by subscribers is subject to several limitations. The limitation of principal relevance in this case is that the Pilot could only be exhibited during a two-year period ending on March 3, 1991 (the "Exhibition Period").

Following expiration of the Exhibition Period, HBO exhibited the Pilot several times, on the dates of May 2, 13, 22 and 26, 1991.

EBP also produced and delivered to HBO six additional episodes based on the Encyclopedia Brown character (the "Episodes"), in exchange for total payment of $1,620,000.[1] The last exhibition of the Episodes by HBO occurred on October 22, 1991. EBP has registered copyrights in both the Pilot (the "Pilot copyright") and the Episodes (the "Episodes copyright").

With respect to the issue of damages, plaintiffs proffer the deposition testimony of an expert damages witness, Allan R. Morris, and the deposition testimony of Deutsch. Plaintiffs' Counter–Statement Pursuant to Local Civil Rule 56.1, dated October 7, 1997 [hereinafter "Counter–Statement"], at 6–7. Morris testifies that plaintiffs suffered damages in two respects. First, Morris asserts that plaintiffs were denied the reasonable license fee defendants should have paid instead of infringing the Pilot copyright. *Id.* at 7. Morris calculates a traditional license fee for the Pilot at between $350,000 and $500,000 for the occasions it was broadcast illegally. *Id.* The allegedly unique circumstances involved in this case would merit, according to Morris, increasing the amount of such a traditional license fee by at least 50%.

1. The parties dispute whether the transaction for the Episodes occurred pursuant to the Agreement or under an alleged separate agreement. Consideration of this dispute is not material to decision of defendants' partial summary judgment motion and, thus, the facts relating thereto are not addressed in detail.

Counter–Statement at 7; Morris Dep. Tr. 187–88.

Second, Morris offers the expert opinion that plaintiffs have been damaged by HBO's assertion during the course of this litigation that the Agreement granted HBO an exclusive 75–year license for the Pilot. Counter–Statement at 7. Morris asserts that potential licensees of the Pilot, the Episodes or of new programming based on the Encyclopedia Brown character would not be willing to consummate a deal until HBO's assertion of an exclusive license is definitively resolved, including following any appeal by HBO as to that issue. *Id.* Deutsch proffers related testimony as to the alleged unwillingness of third parties to license the Pilot copyright from plaintiffs due to HBO's litigation position. Deutsch Dep. Tr. 537–38.

Deutsch proffers a third theory of damages: that HBO's infringement "contaminated" potential deals between plaintiffs and third parties to license the Pilot or consummate other related transactions. Deutsch testifies in particular that deals at least with Showtime and Reeves Entertainment, two cable programmers, failed to occur because of HBO's illegal exhibition of the Pilot.[2] Counter–Statement at 6; Deutsch Dep. Tr. 543.

With respect to the conduct of the cable operator defendants, several facts are undisputed. The relationship between HBO and the cable operator defendants is governed by Service Network Affiliation Agreements. Pursuant to those agreements, HBO delivers programming to the cable operator defendants via a signal transmission from a communications satellite. Joint Pretrial Order, dated April 14, 1997 [hereinafter "JPO"], at 7. The cable operator defendants deliver such programming to subscribing customers exactly as received. *Id.* Programming decisions are made solely by HBO. *Id.* The cable operator defendants do not have the right or ability, pursuant to the Service Network Affiliation Agreements, to review the content of the programs sent by HBO or to make alterations of any kind. *Id.*; Counter–Statement at 2.

It is further undisputed that the Service Network Affiliation Agreements contain an explicit disclaimer of any principal-agent relationship between HBO and the cable operator defendants. Counter–Statement at 9. The agreements also provide for indemnification by HBO of the cable operator defendants.

By Opinion and Order dated August 24, 1994, the Court granted plaintiffs' motion for summary judgment that HBO had infringed the Pilot copyright by exhibiting the Pilot during May 1991. With respect to exhibition of the Episodes, the Court granted HBO's motion for summary judgment, finding that plaintiffs were equitably estopped from asserting HBO infringed the Episodes copyright and, in addition, that plaintiffs' conduct had the effect of creating a nonexclusive license for HBO to exhibit the Episodes.[3] The Court further declined to exercise supplemental jurisdiction over plaintiffs' pendant state law claims.

By various subsequent Stipulations and Orders, the parties have consolidated the separate actions against HBO and the cable operator defendants and dismissed with prejudice from the consolidated action defendant American International Cablevision Industries, Inc. Moreover, pursuant to such Stipulations and Orders, the parties have (i) dismissed with prejudice, as to all defendants, Deutsch's claim for copyright infringement regarding the Pilot and (ii) dismissed with prejudice, as to the cable operator defendants, plaintiffs' claim for copyright infringement regarding the Episodes.

Remaining for resolution in the action is the determination of damages, if any, to plaintiffs resulting from HBO's infringement

---

**2.** Plaintiffs assert that HBO's infringement adversely affected a potential deal with an additional party, Percy Main. Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment, dated October 6, 1997 [hereinafter "Pl. Mem."], at 24; Counter–Statement at 6. However, plaintiffs provide no citation to evidence sup- porting this assertion and the Court has been unable to locate any such evidence in the record.

**3.** As a result of this finding, HBO's counterclaim for unjust enrichment, asserted in the alternative to its defenses to plaintiffs' infringement claim regarding the Episodes, was dismissed.

of the Pilot copyright and the determination of the cable operator defendants' liability, if any. Presently before the Court is defendants' motion for partial summary judgment as to plaintiffs' damages claims and as to plaintiffs' contention that the cable operator defendants may be deemed willful infringers.

## DISCUSSION

### I. Standard for Summary Judgment

A moving party is entitled to summary judgment if the Court determines that there exists no genuine issue of material fact to be tried and the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *see also Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) (citation omitted); *see also Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1231 (2d Cir.1996).

The Court's function in adjudicating summary judgment motions is not to try issues of fact, but instead to determine whether there is such an issue. *See Sutera v. Schering Corp.,* 73 F.3d 13, 15–16 (2d Cir.1995). In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Holt,* 95 F.3d at 129.

## II. Damages

Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 with respect to plaintiffs' damages claims, asserting that (i) plaintiffs' claim for recovery of a reasonable license fee is not cognizable as a matter of law and, in any case, plaintiffs' attempt to quantify such a fee is overly speculative; (ii) there is insufficient evidence by which a reasonable jury could find that HBO's infringement "contaminated" potential business deals between plaintiffs and third parties; and (iii) plaintiffs' claim for damages stemming from HBO's assertion of an exclusive 75–year license for the Pilot copyright is not causally connected to the infringement.

Recovery of damages due to copyright infringement is governed by Section 101(b) of the Copyright Act of 1976, codified at 17 U.S.C. § 504(b). That provision provides in pertinent part:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue....

17 U.S.C. § 504(b). Thus, pursuant to § 504(b), a plaintiff may recover the "actual damages" it suffers, as well as any of defendant's non-redundant "profits" derived from the infringement.[4]

### A. *Reasonable License Fee*

#### 1. *Cognizability of Claim*

Defendants contend that plaintiffs' claim for damages premised on a reasonable license fee is not cognizable in this Circuit as a matter of law. The Court disagrees.

Defendants premise their contention on the decision of the Court of Appeals for the Second Circuit in *Business Trends Analysts, Inc. v. Freedonia Group, Inc.,* 887 F.2d 399

---

4. As an alternative to recovery of "actual damages" and "profits", a plaintiff may elect recovery of statutory damages provided that the copyright has been timely registered. 17 U.S.C. § 504(c); *see also* 17 U.S.C. § 412(2). Plaintiffs in this case timely registered the Pilot copyright; however, they have not, as of this stage, elected recovery of statutory damages.

(2d Cir.1989). In that case, defendants, direct competitors of plaintiff, had infringed plaintiff's copyright in its industry research reports by incorporating portions of the reports into defendants' products. *Id.* at 401–02. Following a bench trial, the district court awarded plaintiff damages in part based on the "value of use" of plaintiff's reports by defendants, equal to the market price of plaintiff's reports times the number of infringing reports defendants had sold (less the price at which defendants had sold them). *Id.* at 404. In awarding such "value of use" damages, the district court relied on the decision of the Court of Appeals for the Seventh Circuit in *Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357 (7th Cir.1985), which held that damages equal to the "acquisition cost saved by infringement instead of purchase" were permissible under § 504(b). *Id.* at 361.

On appeal, the Second Circuit reversed, holding that the district court's award of "value of use" damages in that case exceeded the "conventional and narrow method of calculating [both] damages and profits" pursuant to § 504(b). *Id.* at 405. Specifically, the Court found that the award of "value of use" damages in the case did not qualify as "actual damages" to plaintiff under § 504(b) because the award was premised upon an "entirely hypothetical sale[ ]" between plaintiff and defendants. *Id.*

In addition, the Court found more generally that "value of use" damages, if viewed as saved acquisition costs to defendants, do not fit within the meaning of "profits" recoverable under the Copyright Act. *Id.* The Court determined that while saved costs may be considered gains in economic theory, § 504(b) has "a more conventional view of profits in mind" comprising of "gross revenue less out-of-pocket costs". *Id.* at 406.

### a. *Reasonable License Fee as "Profits" of Defendants*

■ To the extent plaintiffs in the instant case assert a reasonable license fee should be awarded as "profits" gained by HBO as cost savings in not licensing the Pilot copyright during the infringing period, such a claim is precluded as a matter of law by the *Business Trends* decision. Saved acquisition costs do not fall within the layman's meaning of the word "profits" in § 504(b), irrespective of whether they are labeled "value of use", a "reasonable license fee" or some other term. *Id.*; *see also In Design v. K–Mart Apparel Corp.*, 13 F.3d 559, 563 (2d Cir.1994) ("Since the term 'profit' is not defined in the Copyright Act, the word has been assigned its usual meaning, such as the excess of return over expenditures ... or the gain derived from an investment represented by the difference between its selling price above its cost").

### b. *Reasonable License Fee as "Actual Damages" to Plaintiffs*

■ An issue remains, however, as to whether a reasonable license fee is recoverable under the "actual damages" prong of § 504(b) as a lost sale by plaintiffs of a license to HBO for use of the Pilot during the infringing period. The question before the Court is whether the *Business Trends* decision also precludes such a claim for recovery as a matter of law. The Court finds that it does not.

■ The principal measure of "actual damages" under § 504(b) is "the extent to which the market value of the copyrighted work at the time of infringement has been injured or destroyed by the infringement." *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1118 (2d Cir.1986). The Second Circuit has recognized that "[b]ecause the proper measure of damages is often difficult to ascertain ..., indirect evidence may be used to fix the amount of the damages." *Id.* Indirect evidence may include proof of "profits which the plaintiff might have earned were it not for the defendant's infringement," such as lost sales. *Id.* (citations omitted); *see also Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F.Supp. 1328, 1340 (S.D.N.Y.1997); 4 Melville B. Nimmer & David Nimmer, Nimmer On Copyright § 14.02[A], at 14–8 to 14–12.

■ Analysis of a claim of lost sales to a defendant is the same as that which would apply to a claim of lost sales to a third party. Either claim involves assessment of two factual issues: (i) whether plaintiff would have

made a sale or licensed use of the copyrighted work to a party absent the infringement, and (ii) if such a transaction would have occurred, whether plaintiff would have profited. *See Stevens Linen Assoc., Inc. v. Mastercraft Corp.,* 656 F.2d 11, 14 (2d Cir.1981). If a plaintiff is successful in establishing both factual elements, then recovery for lost sales is warranted, whether the sale would have been to defendant or to some other party.

The Court does not read the *Business Trends* decision to reach a contrary conclusion. The principal issue the decision addresses is whether "value of use" damages are permissible if viewed as a defendant's saved acquisition cost. *See* 887 F.2d at 405–406.

Insofar as the *Business Trends* decision addresses recovery of "value of use" as a lost sale, it does not purport to establish a *per se* prohibition on such a claim. *Id.* at 405. To the contrary, the Second Circuit's emphasis in that regard was on the fact that the particular parties' status as direct competitors rendered the alleged lost sale to defendants "completely hypothetical". *Id.* The Court stated that "[t]he last thing the infringers wanted to buy and to sell was the actual material produced under their competitor's name." *Id.*

That the *Business Trends* holding regarding recovery of lost sales to a defendant was limited to its particular facts is confirmed by the Court's later decision in *Rogers v. Koons,* 960 F.2d 301 (2d Cir.), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). In *Rogers,* the Second Circuit considered the propriety of a sculptor's incorporation of various elements of a copyrighted photograph into one of his works. *Id.* at 304–05. The parties in the *Rogers* case, in contrast with the parties in the *Business Trends* case, were not direct competitors. *Id.* Thus, a possibility existed that defendant in the *Rogers* case would have consummated a transaction for use of the photograph. In remanding the case to the district court for determination of damages, the Court noted, *in dicta,* that:

> While we leave the ascertainment of damages to the district court, *under the circumstances of this case,* we think that a reasonable license fee for the use of [the photograph] best approximates the market injury sustained by Rogers as a result of Koons' misappropriation. *See Deltak, Inc. v. Advanced Systems, Inc.,* 767 F.2d 357, 360–61 (7th Cir.1985).

*Id.* at 313 (emphasis added). *Rogers* suggests that award of a reasonable license fee as "actual damages" under § 504(b) is permissible when non-competitors are involved. At a minimum, *Rogers* confirms that the *Business Trends* decision did not implicitly establish a *per se* prohibition on recovery of such lost sales. *See generally Sunset Lamp Corp. v. Alsy Corp.,* 749 F.Supp. 520, 524 (S.D.N.Y.1990) ("*Business Trends* emphasizes the broad scope of compensation that may be sought under the Copyright Act and merely limits the extent of actual recovery to amounts proved to have resulted from a defendant's infringement, as demonstrated by credible evidence."), *cited with approval in Graham v. James,* 144 F.3d 229, 238 (2d Cir.1998).

■ It is, however, worth emphasizing that, as is the case with claims of lost sales involving third parties, the burden rests squarely with plaintiff "to demonstrate that it would have made the sales [to defendant] but for the infringing activity". *Odegard,* 963 F.Supp. at 1340; *see also Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467, 472 (2d Cir. 1985). The Court recognizes that such proof may be difficult. The facts may show that defendant acted with ill motive, indicating that defendant would not have entered into an arrangement for legal use of the good as an alternative to infringing. Moreover, it may be the case that plaintiff would not, for a variety of reasons, actually have consummated a sale or have licensed the copyrighted good to defendant. With respect to these two considerations, the fact that the parties are competitors would have significant probative value.

Conversely, facts tending to suggest that such a sale or licensing would have occurred include: (i) lack of ill motive of defendant in infringing, (ii) a pre-existing sale or licensing arrangement between the parties for the same or different copyrighted works, and (iii)

other aspects of the parties' relationship, such as their status as non-competitors.

◼ On the facts presented thus far in the instant case, which facts await full development at trial, the Court finds that a genuine issue of material fact exists as to whether a sale to HBO would have occurred absent the infringement. It is undisputed that plaintiffs and HBO had a pre-existing licensing agreement regarding the very copyrighted product infringed by defendants. Moreover, the fact that plaintiffs and HBO are not direct competitors supports a reasonable inference that licensing of the Pilot for additional broadcasts would have been a viable alternative. Finally, the Court notes that HBO contends its infringement was not willful but, instead, was based on a good faith belief that the Pilot was being properly exhibited. JPO at 21. Based on these facts, the Court cannot at this stage say that the possibility of payment of a reasonable license fee by HBO to plaintiffs for the infringing use would have been purely abstract or "hypothetical". *See Business Trends*, 887 F.2d at 405. Accordingly, defendants' motion for summary judgment on this issue is denied.

### 2. *Sufficiency of Evidence*

Defendants also move for summary judgment regarding the reasonable license fee claim on the ground that plaintiffs' evidence of the amount of such a fee is overly speculative. The Court disagrees.

Plaintiffs have offered excerpts from the deposition testimony of their expert witness, Allan Morris, as to the approximate amount of a reasonable licensing fee for use of the Pilot during the infringing period. In addition, the Agreement between the parties regarding the Pilot, which provided for a payment to plaintiffs at least in part as a licensing fee, is further evidence of the appropriate value of plaintiffs' damages claim.

◼ The Court finds that defendants' criticisms of the evidence submitted by plaintiffs consist of arguments as to credibility and weight. Such arguments do not establish a basis for granting summary judgment against plaintiffs. *See Rodriguez v. City of*

*New York*, 72 F.3d 1051, 1061 (2d Cir.1995) ("On a summary judgment motion, the court is not to weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact."). The Court further notes that it must, of course, resolve all ambiguities in the evidence and draw all justifiable inferences therefrom in favor of plaintiffs. *Id.; see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Holt*, 95 F.3d at 129. In light of the standard of decision and upon review of the proffered evidence, the Court finds that a genuine issue of material fact exists as to the quantification of a reasonable license fee and, consequently, summary judgment in favor of defendant with regard to that issue is denied.

### B. *Lost Sales to Third Parties*

◼ Defendants also contend that plaintiffs have failed to proffer sufficient evidence of any lost sales to third parties resulting from the infringement. The Court disagrees.

On this factual point, plaintiffs proffer the deposition testimony of Deutsch, who testifies that two deals were not consummated due to HBO's infringing broadcasts. Deutsch Dep. Tr. 543. The Court finds that a genuine issue of material fact exists with respect to those alleged lost sales. While the Court recognizes that the evidence in this respect is somewhat meager, the Court must draw all reasonable inferences raised by the evidence in plaintiffs' favor and it would be inappropriate at this stage to weigh that evidence or decide the issue of fact. *See Rodriguez*, 72 F.3d at 1061. That task must be left for trial. Accordingly, summary judgment in favor of defendants on this damages claim is denied.

### C. *Alleged Damage Due to HBO's Litigation Claims*

Plaintiffs argue that they have been damaged by HBO's assertion in this litigation that the Agreement grants HBO an exclusive 75–year license for the Pilot. Plaintiffs contend that assertion of that position has deterred other potential licensees from entering into transactions with plaintiffs by placing a "cloud" over plaintiffs' copyright. Defendants contend that this asserted harm

is not causally related to the infringement and, in addition, that no proof of actual harm has been proffered.[5]

The Court agrees with defendants. Plaintiffs' claim of harm based on positions taken by HBO in this litigation clearly does not "bear a 'necessary, immediate and direct connection' to the defendants' infringement." *Sunset Lamp Corp.*, 749 F.Supp. at 522 (quoting *Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 509 (2d Cir.1977)); *see also Antenna Television, A.E. v. Aegean Video Inc.*, 1996 WL 298252, at *3 (E.D.N.Y. Apr.23, 1996). The source of the claimed harm is a legal argument made following plaintiffs' initiation of the lawsuit; the source is not the infringement itself. Counter–Statement at 12. *See* 17 U.S.C. § 504(b) ("copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement"); *Harper Row, Publishers v. Nation Enters.*, 471 U.S. 539, 567, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Banff Ltd. v. Express, Inc.*, 921 F.Supp. 1065, 1068 (S.D.N.Y.1995).

In addition, plaintiffs have proffered no evidence that HBO made the assertion to any third party or that anyone relied on HBO's litigation position in refusing to consummate a deal with plaintiffs. In other words, even if HBO's litigation position were causally related to the act of infringement, plaintiffs have failed to adduce evidence that the position harmed them.

Consequently, as to this damages claim, the Court finds that plaintiffs have failed to establish a genuine issue of material fact. Summary judgment in favor of defendants on this claim is, therefore, granted.

### III. Willful Infringement by Cable Company Defendants

Defendants also move for summary judgment in their favor that there is no evidence

by which a reasonable jury could find the cable operator defendants willfully infringed the Pilot copyright. Plaintiffs respond that there is sufficient evidence HBO acted as the agent of the cable operator defendants and, therefore, that a finding that HBO willfully infringed may be imputed to the cable operator defendants.[6]

The Court finds that there is no evidence by which a reasonable juror could find HBO is the agent of the cable operator defendants. Accordingly, there exists no basis on which the cable operator defendants could be imputed to be willful infringers of the Pilot copyright, and defendants are entitled to summary judgment on that issue.

A principal-agent relationship is established where there is " 'a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act.' " *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1546 (S.D.N.Y.1991) (quoting *Meese v. Miller*, 436 N.Y.S.2d 496, 499, 79 A.D.2d 237, 241 (4th Dep't 1981)). "An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control." *In re Shulman Transp. Enterprises, Inc.*, 744 F.2d 293, 295 (2d Cir.1984) (citing Restatement (Second) of Agency, §§ 1(1) comment b, 14 (1958)); *see also Ahn v. Rooney, Pace Inc.*, 624 F.Supp. 368, 370–71 (S.D.N.Y.1985) ("The element of subservience is essential, for there can be no agency relationship where the alleged principal holds no right of control over the alleged agent.")

In the instant case, plaintiffs have proffered no evidence that HBO is an agent of the cable operator defendants. The Service Network Affiliation Agreements between HBO and the cable operator defendants specifically disclaim any such relationship. Counter–Statement at 9. Moreover, it is un-

---

5. Defendants do not raise, and the Court therefore does not address, the issue of whether such assertions made in the course of litigation are afforded immunity pursuant to a state common law or statutory judicial-proceeding privilege. *See, e.g., AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 269–272 (2d Cir.1992); *O'Brien v. Alexander*, 898 F.Supp. 162, 171–72 (S.D.N.Y.1995).

6. The Court notes that no finding has been made as to whether HBO willfully infringed. Defendants assume, for purposes of their motion, that HBO's infringement was willful.

disputed that pursuant to the agreements the cable operator defendants have no control over HBO regarding the content of HBO's programming. JPO at 7. The cable operator defendants simply convey to subscribers the programming signal received from HBO. *Id.* The cable operators cannot, under the agreements, alter them or even review them prior to broadcast for content or for compliance with relevant copyrights. *Id.*

Plaintiffs argue that HBO's indemnification of the cable operator defendants, and the cable operator defendants' resulting alleged lack of concern with HBO's copyright compliance, is evidence that HBO acts as the cable operator defendants' agent. Lack of concern, whether due to an indemnity agreement or otherwise, may be probative in assessing whether the cable operator defendants directly constitute willful infringers due to reckless disregard. *See Lipton v. Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995); *N.A.S. Import Corp. v. Chenson Enter., Inc.,* 968 F.2d 250, 252 (2d Cir.1992); *Childress v. Taylor,* 798 F.Supp. 981, 996 (S.D.N.Y.1992). However, as to the separate issue of agency, the alleged complete abdication of control over copyright compliance reflected by the indemnification provision can only reasonably be construed, by its very nature, to be further evidence disproving the existence of an agency relationship. *See In re Shulman,* 744 F.2d at 295–96 ("lack of concern" is evidence that alleged agent is not "subject to the [alleged principal's] direction and control").

Therefore, the Court finds that there is no evidence from which a trier of fact could reasonably infer an agency relationship between HBO and the cable operator defendants. Accordingly, the Court grants defendants' motion for summary judgment that the cable operator defendants cannot be found to be willful infringers by imputing HBO's alleged willful infringement.

## CONCLUSION

For the reasons set forth above, defendants' motion for partial summary judgment is hereby GRANTED in part and DENIED in part. The parties shall appear for a pretrial conference before this Court at the United States Courthouse, 500 Pearl Street, New York, New York, on November 20, 1998, at 9:30 a.m.

**SO ORDERED.**