**GETAPED.COM, INC., Plaintiff,**

v.

**Shelly CANGEMI, John Shields, and Ski & Cycle Hut, Defendants.**

**No. 00 CIV. 7661(AKH).**

United States District Court, S.D. New York.

Feb. 28, 2002.

William Dunnegan, AnnMarie Croswell, Perkins & Dunnegan, New York City, for Getaped.Com, Inc.

## OPINION AND ORDER MODIFYING REPORT AND RECOMMENDATION

HELLERSTEIN, District Judge.

The Honorable Ronald L. Ellis, U.S.M.J., after conducting an inquest on damages, issued a Report and Recommendation ("R & R") dated December 12, 2001 and filed December 13, 2001. After *de novo* review of the record and consideration of objections, *see* 28 U.S.C. § 636(b)(1), I hold that the R & R is modified in the respects discussed below, and instruct the Clerk of Court to grant judgment for the plaintiff in the modified amount.

### Background

According to the allegations of the complaint and the record of inquest, plaintiff Getaped.com, Inc. ("Getaped") created a website at <www.getaped.com> to sell Go–Ped ® brand motorized scooters (the "Getaped site"). Plaintiff spent 400 hours or more over an eight-week period design-

ing and creating the source code for the Getaped site, which went "live"[1] on the Internet in December 1999. As with most websites, the Getaped site has undergone several modifications. Plaintiff registered one of the modified versions of the Getaped site—a version which first went live on July 15, 2000—with the United States Copyright Office on August 14, 2000.

From at least early summer 2000, defendants copied the Getaped website by posting identical source code at their own sites, <www.buyaped.com> and <www.23water.com>. Getaped claims that the replication of the Getaped site at defendants' sites infringed its copyright and diverted traffic and sales from its site.

Default judgment on liability was entered against defendants John Shields and Ski & Cycle Hut on January 23, 2001. Defendant Shelly Cangemi was never served and was dismissed without prejudice on March 6, 2001. The issue before Judge Ellis, and reviewed here, is the extent of damages to which Getaped is entitled for the defendants' infringement. Judge Ellis took proofs from the plaintiff on the issue of damages, and heard objections from the defendants, who finally appeared in the damages portion of the suit. After consideration of the evidence and the arguments, Judge Ellis concluded that plaintiff was entitled to $1,050.00 in damages. I hold that Judge Ellis erred in his interpretations of material propositions of law, and that plaintiff's correct recovery should be $30,000 in statutory damages, plus attorney's fees and costs.

### Discussion

Under the Copyright Act, plaintiff is entitled, at its own election, to either (1) actual damages and the infringer's profit, or (2) statutory damages, for defendants' infringement. 17 U.S.C. § 504. The Court may also award attorney's fees and costs. 17 U.S.C. § 505. Both statutory damages and attorney's fees and costs are unavailable if "(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412.

Judge Ellis concluded that plaintiff was entitled neither to statutory damages nor attorney's fees. He reasoned that plaintiff's source code was an "unpublished work" for purposes of the Copyright Act, see 17 U.S.C. § 101, and, because defendants' copyright infringement commenced before the August 14 registration, plaintiff therefore was not entitled to statutory damages by virtue of Section 412. On the issue of actual damages, Judge Ellis found that plaintiff had failed to prove that its decline in sales was caused by defendants' infringement, and awarded instead a license fee of $1,050 as damages. I disagree with Judge Ellis' holdings.

## I. Damages

### A. Statutory Damages

As Judge Ellis determined, whether plaintiff is entitled to statutory damages depends on whether plaintiff's source code for the Getaped site was "published" according to the Copyright Act's definition of that word. If the source code was "published," Getaped is entitled to elect statutory damages in lieu of actual damages because it registered its work within the

---

**1.** For reasons central to this decision, this rather awkward phrase is used in lieu of other terms that have technical meanings under the Copyright Act.

three-month grace period permitted by 17 U.S.C. § 412(2). If the source code was not published, Getaped is subject to the limitations of 17 U.S.C. § 412(1) and cannot recover statutory damages because defendants' infringement commenced before the date of plaintiff's registration.

"Publication" is a technical term under the Copyright Act and is defined as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending," or the "offering to distribute copies . . . to a group of persons for purposes of further distribution . . . or public display."[2] 17 U.S.C. § 101. The definition also points out that "[a] public performance or display of a work does not of itself constitute publication." *Id.* "To 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process." *Id.*

Judge Ellis determined that Getaped had not "published" its website, but, rather, merely "displayed" it. In coming to this conclusion, Judge Ellis implicitly distinguished between posting a website or webpage (what Getaped did) and posting music files, software or photographs on a webpage. The latter has been held in numerous instances to constitute publication. *See, e.g., A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1014 (9th Cir.2001) (uploading music files to the internet for others to copy violates copyright holder's exclusive publication right); *State v. Perry,* 83 Ohio St.3d 41, 697 N.E.2d 624, 628 (1998) (in finding a state statute preempted by the Copyright Act, noting that "[p]osting software on a bulletin board

where others can access and download it is distribution," i.e., publication); *Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.,* 939 F.Supp. 1032, 1039 (S.D.N.Y. 1996) (uploading content on internet and inviting users to download it violates exclusive publication right); *Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.,* 982 F.Supp. 503, 513 (N.D.Ohio 1997) (defendants violated plaintiff's exclusive publication right by moving subscriber-uploaded photographs to common bulletin board service files); *Playboy Enterprises Inc. v. Frena,* 839 F.Supp. 1552, 1556 (M.D.Fla. 1993) (defendant's unauthorized uploading of copyrighted images with the knowledge that the images would be downloaded by other bulletin board subscribers constituted an infringement of plaintiff's exclusive publication right).

The common theme running through these decisions is the ability of the Internet user to download a file containing a copyrighted work and thereby gain control of it, that is, gain a proprietary or possessory interest in the copyrighted work. As the foremost copyright treatise states, "a *sine qua non* of publication [is] the acquisition by members of the public of a possessory interest in tangible copies of the work in question." M. Nimmer and D. Nimmer, *Nimmer on Copyright* § 4.07 (2001) [hereinafter, "*Nimmer*"].

Consistent with the theory espoused by Nimmer and applied by the courts, and consistent with the Copyright Act's definition of "publication," the public display of a work of art or the public performance of a play does not constitute publication. A person does not take any sort of posses-

---

**2.** The definition of "publication" tracks the language of 17 U.S.C. § 106(3), which gives copyright holders the exclusive right "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." Section

106(3) therefore gives copyright holders the exclusive right of publication, among the other exclusive rights. *See Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 299 (3d Cir.1991).

**402**

sion or control of a copy of a painting or a play merely by viewing it. By holding that Getaped did not "publish" its website, Judge Ellis likened the website to a public display of a work of art or the public performance of a play Accessing a webpage, however, is not like viewing a painting or watching a play, and Judge Ellis erred in making this equivalence.

By accessing a webpage, the user not only views the page but can also view—and copy—the code used to create it.[3] In other words, merely by accessing a webpage, an Internet user acquires the ability to make a copy of that webpage, a copy that is, in fact, indistinguishable in every part from the original. Consequently, when a website goes live, the creator loses the ability to control either duplication or further distribution of his or her work. A webpage in this respect is indistinguishable from photographs, music files or software posted on the web—all can be freely copied. Thus, when a webpage goes live on the Internet, it is distributed and "published" in the same way the music files in *Napster* or the photographs in the various *Playboy* decisions were distributed and "published."

Under this analysis, Getaped did "publish" its website (and, necessarily, the underlying source code) on July 15, 2000, when its modified website first became accessible on the Internet. Therefore, Getaped is entitled to statutory damages under 17 U.S.C. § 504 (and, as discussed below, attorney's fees and costs under 17 U.S.C. § 505).

Getaped seeks $30,000 in statutory damages. Under the applicable statute, the court may award between $750 and $30,000 in damages per work; in cases

involving innocent infringement, a $200 minimum award is permitted, while in cases of willful infringement, the maximum possible award increases to $150,000. 17 U.S.C. § 504.

█ Getaped charges defendants with willful infringement. "[A] court need not find that an infringer acted maliciously to find willful infringement." *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1115 (2d Cir.1986). "The standard is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." *Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir.1993).

Although Getaped did not brief the issue during the damages proceeding, there is sufficient evidence to support the finding that defendants at least "recklessly disregarded the possibility" that their activities constituted copyright infringement and therefore can be charged with willful infringement. First, defendants copied Getaped's source code outright, *see N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 253 (2d Cir.1992) (fact that infringer's product was identical to plaintiff's held to be evidence of willfulness), and there can be no argument that defendants' believed that their use was privileged in any way, *compare Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996), *cert. denied*, 520 U.S. 1156, 117 S.Ct. 1336, 137 L.Ed.2d 495 (1997) (defendant's belief that its activities constituted fair use of copyrighted material weighed against finding of willfulness). Additionally, Getaped's website had a prominent copyright

3. To view the source code used to create a webpage, all an Internet user needs to do is right click on the page and choose "View Source." A new window will then appear, displaying the programming code used to create the page. *See* http://www.howstuffworks.com/web-page.htm.

notice. *See Castle Rock Entertainment v. Carol Pub. Group, Inc.*, 955 F.Supp. 260, 267 (S.D.N.Y.1997) (fact that plaintiff's copyrighted works had copyright notices weighed in determining willfulness of defendant's infringement), *aff'd* 150 F.3d 132 (2d Cir.1998). Moreover, defendants' infringing activities continued despite notice from Getaped. This evidence provides sufficient support for a finding that defendants' acted in reckless disregard of plaintiff's rights.

Since I find defendants' infringement to have been willful, I can award up to $150,000 in statutory damages. 17 U.S.C. § 504. I have broad discretion in awarding statutory damages, *NFL v. PrimeTime 24 Joint Venture*, 131 F.Supp.2d 458, 472 (S.D.N.Y.2001), and should award an amount which will further the Copyright Act's dual objectives of compensating copyright owners for past infringement and deterring future infringement. *Schwartz–Liebman Textiles v. Last Exit Corp.*, 815 F.Supp. 106, 108 (S.D.N.Y. 1992). Factors considered relevant to determining an appropriate statutory damages award include the "expenses saved and profits reaped by the infringers," the revenues lost by the plaintiff, the infringers' state of mind (wilful, knowing or merely innocent), the value of the copyright and the deterrent effect on both the defendant and others. *Fitzgerald Pub. Co.*, 807 F.2d at 1117. "Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy [of discouraging wrongful conduct]." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952).

Considering these factors, I conclude that plaintiff's request for $30,000 in statutory damages is reasonable and appropriate.

## B. *Actual Damages*

Section 504(b) of the Copyright Act authorizes a copyright owner to recover actual damages and the infringer's profits in lieu of statutory damages. 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."). Actual damages measure "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Fitzgerald Pub. Co.*, 807 F.2d at 1118 (citing *Nimmer* § 14.02 at 14–6). To recover actual damages, the plaintiff must show a causal connection between the infringement and any damages sustained. *See Sunset Lamp Corp. v. Alsy Corp.*, 749 F.Supp. 520, 522 (S.D.N.Y.1990) (the "actual damages must bear a 'necessary, immediate and direct causal connection' to the defendant's infringement") (quoting *Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 509 (2d Cir.1977)). Courts do "not allow speculation as to the amount of actual damages suffered." *Sunset Lamp*, 749 F.Supp. at 522 (citing *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir.1985)).

■ Judge Ellis concluded that Getaped failed to establish a causal connection between its lost sales and the defendants' infringement. He bases this conclusion on two considerations. First, Judge Ellis equated plaintiff's failure to "offer any evidence about sales of the product through the infringing website" as a "fail[ure] to establish a direct correlation between the infringement and plaintiff's lost sales." I disagree with this statement. It is not necessary to demonstrate that an infringer had sales in order to show that the copy-

right holder was damaged. A copyright holder is damaged, for example, even when customers turn away from a product because of confusion caused by infringement, even if the infringer has no sales.

■ Judge Ellis also faulted plaintiff for failing to present evidence that the drop in sales was not related to outside factors, particularly after Getaped admitted that numerous competitors exist and that sales are somewhat seasonal. I believe Judge Ellis overstated his conclusion, and thereby misplaced the burden of proof on this issue. A plaintiff who is damaged by another's infringement is entitled to presumptions arising from his own records. "If the infringer occupies the same market as the copyright owner, courts usually employ [the owner's] lost sales as the measure of damages on the assumption that every sale made by the defendant is one that the plaintiff otherwise could have made." Paul Goldstein, *Copyright* § 12.1.1.1, at 12:7 (2d ed.2000).[4] The burden then shifts to the infringer to explain the loss as caused by some factor other than his or her infringement. *See Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 567, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (once plaintiff shows a causal connection, "the burden then properly shifts to the infringer to show that this damage would have occurred had there been no taking of the copyrighted expression").

■ However, I concur with Judge Ellis that Getaped failed to offer sufficient evidence to show a causal connection between its losses and defendants' infringement. This is not the usual case, where the defendant's infringing product is itself offered for consumption in place of the copied product. "[T]he value of [Getaped's] copyrighted work resides not in its intrinsic value, but rather ... in its tendency to promote the sales of other products." *Nimmer* § 14.02[A] at 14–14. As such, Getaped's ability to establish a causal connection is difficult.

■ In situations of such difficulty, courts sometimes have awarded a licensing fee as "actual damages," and Judge Ellis concluded that a licensing fee award would be appropriate in this case. His conclusion was buttressed by *Davis v. The Gap, Inc.,* 246 F.3d 152 (2d Cir.2001), in which the Second Circuit held that licensing fees can be awarded as an element (or the entirety) of actual damages in appropriate situations. In *Davis,* The Gap had run an advertisement in which one of the models wore a pair of sunglasses designed by plaintiff. In holding that plaintiff was entitled to an award of the lost licensing fee it could have charged for this use, the Second Circuit pointed out that The Gap's use of the copyrighted eyewear without first receiving permission was an "oversight or mistake," and that, if the oversight had not occurred, either the parties would have negotiated a reasonable licensing fee or The Gap would have eliminated the eyewear from its photograph. 246 F.3d at 164. The *Davis* court contrasted its case to the situation presented in *Business Trends Analysts, Inc. v. Freedonia Group, Inc.,* 887 F.2d 399 (2d Cir.1989), in which there had been no possibility of friendly negotiations. *See* 887 F.2d at 405 (finding that the plaintiff "no more priced the [creation of the copyrighted product] and then

---

**4.** "Same market" must be applied strictly. *See, e.g., Goldenberg v. Doe,* 731 F.Supp. 1155, 1159–60 (E.D.N.Y.1990) (where defendant sold infringing videotape of comedian's performance, comedian could not recover for lost ticket sales to live performances where he failed to show by a preponderance of evidence that poor turnout was attributable to defendant's infringing activities).

decided to copy than a purse-snatcher decides to forgo friendly negotiations").

By premising its holding on the possibility of friendly negotiations, the *Davis* Court could be read as having affirmed the holding of *Encyclopedia Brown Productions, Ltd. v. Home Box Office*, 25 F.Supp.2d 395 (S.D.N.Y.1998). *Encyclopedia Brown* held that a licensing fee can be awarded as damages only where the plaintiff shows that defendant would have been willing to pay for the use were it not for the infringement. 25 F.Supp.2d at 400–01. Factors useful in establishing this, according to the *Encyclopedia Brown* court, include "(i) lack of ill motive of defendant in infringing, (ii) a pre-existing sale or licensing arrangement between the parties for the same or different copyrighted works, and (iii) other aspects of the parties' relationship, such as their status as non-competitors." *Id.* at 401–02.

The limitation imposed by *Encyclopedia Brown* may not be appropriate where, as here, a licensing fee may be the only way to approximate actual damages because proof of more traditional damages (such as lost sales) is not possible or readily accessible. As the court itself realized, the *Encyclopedia Brown* rule creates a situation where the defendant's own bad faith makes it more difficult for the plaintiff to recover. 25 F.Supp.2d at 401; *see also Nimmer* § 14.02[A] at 14–19. The *Encyclopedia Brown* rule also creates a disincentive for licensed use: the scheme encourages a would-be infringer not to risk up-front negotiations that might result in the copyright holder disallowing the use because the would-be infringer knows that the worst possible outcome is a court-ordered licensing fee. *Cf. Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1350–51 (7th Cir.1994) ("[B]ecause [an award of a license fee] seeks to mirror the bargain at which the parties would have

arrived had negotiations taken place, it becomes for the malefactor simply the cost of doing business. There is no incentive to engage in protracted, expensive, and perhaps unsuccessful licensing negotiations when the consequence of getting caught for trade piracy is simply to pay what should have been paid earlier. *Nunc pro tunc* payment of the royalty fee becomes simply the 'judicial expense' of doing business.").

Thus, I do not believe the *Davis* Court meant to adopt the *Encyclopedia Brown* approach in all situations. *Davis* was attempting to correct an unacceptable situation: the risk that an infringer would "get his illegal taking for free." 246 F.3d at 164. The Court weighed the risks and determined that, "as between leaving the victim of [an] illegal taking with nothing, and charging the illegal taker with the reasonable cost of what he took, the latter ... is the preferable solution." *Id.* at 166. This rationale holds true even where there is no evidence that the infringer—or the copyright holder—would have negotiated with the copyright holder. Therefore, permitting recovery of a reasonable license fee is appropriate even where plaintiff cannot show that defendant would have been willing to negotiate a license to use plaintiff's copyrighted work, or where the plaintiff cannot plausibly argue that it would have been willing to license defendant's use.

While I therefore agree with Judge Ellis that a license fee can be awarded to Getaped, I disagree with the amount Judge Ellis fixed as reasonable in this situation. Getaped sought as its uncollected license fee the full cost of creating its web page, estimated at $35,000. Judge Ellis determined that Getaped's license fee would not necessarily equal its "out-of-pocket" cost to create the site, and fixed the licensing fee at 3% of the creation cost. While a 3%

licensing fee might make sense in another context, it does not make sense here. Getaped would not be willing to let a direct competitor use an exact duplicate of its site for such a small fee.

Unfortunately, insufficient proof was offered as to what an appropriate licensing fee should be between these competitors. Without further evidence on this issue, any award of a license fee would be speculative and inappropriate. *See Abeshouse*, 754 F.2d at 470 (speculative damages awards not permitted). Since Getaped is entitled to statutory damages as discussed above, and has in fact elected to receive statutory damages as discussed immediately below, I do not need to take further evidence on the licensing fee issue.

### C. *Election of Damages*

The Copyright Act entitles plaintiffs to chose between recovery of actual and statutory damages any time before the court renders its final judgment. 17 U.S.C. § 504(c)(1). Once a plaintiff elects statutory damages, he or she gives up the right to seek actual damages. "[A]lthough the election may be made at any time before final judgment is rendered, once a plaintiff elects statutory damages he may no longer seek actual damages." *Twin Peaks Productions*, 996 F.2d at 1380.

Here, Getaped originally sought actual damages or, in the alternative, statutory damages. However, in its Proposed Findings of Fact and Conclusions of Law submitted after the damages proceeding, Getaped elected recovery of statutory damages. This election is binding on Getaped for the damages inquest and all future proceedings. *Cf. Twin Peaks Productions*, 996 F.2d at 1380 ("Once a plaintiff has elected statutory damages, it has given up the right to seek actual damages and may not renew that right on appeal.").

### II. Attorney's Fees and Costs

Section 505 of the Copyright Act provides that a court may award "full costs," including reasonable attorney's fees. 17 U.S.C. § 505. As discussed in the context of statutory damages, Getaped qualifies for attorney's fees and costs because it registered its work with the Copyright Office within three months of publication, pursuant to 17 U.S.C. § 412(2). An award of attorney's fees under Section 505 is discretionary, though any award must be consistent with the purposes of the Copyright Act: compensation and deterrence. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). A decision to award fees should be based on factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 535 n. 19, 114 S.Ct. 1023 (internal quotation marks omitted); *see also Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 147 (2d Cir.2001). An award of attorney's fees is justified, *inter alia*, where the infringement was willful, as here. *Kepner–Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999).

The Second Circuit has adopted the lodestar method to calculate the reasonableness of attorney's fees under Section 505. *Crescent Publishing*, 246 F.3d at 150. This method emphasizes a comparison to rates of lawyers of similar skill and experience in the community. *See id.* Calculating a lodestar figure requires consideration of such factors as (1) time and labor; (2) novelty and difficulty of the questions presented; (3) skills requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to

acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir.1989) (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)). Many of these factors are subsumed within the initial calculation of the attorney's hours and hourly rate. *Id.*

Getaped claims $16,015 for attorney's fees and costs, supported by an affidavit attaching the actual bills from its attorneys. In this case, the market of willing seller (i.e., provider of legal services) and willing buyer (i.e., the client) is a sufficient test of reasonableness: the requested fee award does not seem out of proportion to the skill and work required and is a relatively small amount compared to modern litigation costs, even in copyright cases. *See, e.g., Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,* 166 F.3d 65, 74 (2d Cir.1999) ($200,000 attorney's fee award); *In Design v. Lauren Knitwear Corp.,* 782 F.Supp. 824, 836–37 (S.D.N.Y. 1991) ($103,000 attorney's fee award). Although defendants have lodged some objections to the amount claimed, their objections are not substantial.

In awarding Getaped $30,000 in statutory damages, I took into account Getaped's ability also to recover reasonable attorney's fees from defendants. Recovery should include Getaped's reasonable costs of vindicating its rights. Getaped's request for $16,015 in attorney's fees and costs is reasonable and is hereby awarded.

## Conclusion

For the reasons stated, I modify Judge Ellis' Report and Recommendation, and hold that plaintiff may recover $30,000 in statutory damages, plus attorney's fees and costs of $16,015. The Clerk shall enter judgment for plaintiff in these amounts.

SO ORDERED.