**ARCLIGHTZ AND FILMS PVT. LTD. and Enzo Pictures Ltd., Plaintiffs,**

v.

**VIDEO PALACE INC., "M. Pervez", Individually and d/b/a "Video Palace", Cinram International, Inc., Cinram Video Centre, the Amazing Video Centre, and John Does 1–20, Defendants.**

**No. 01 Civ. 10135(SAS).**

United States District Court, S.D. New York.

Oct. 15, 2003.

---

Megha Bhouraskar, Poppe & Bhouraskar, LLP, New York, New York, for Plaintiffs.

Gerald J. McMahon, New York, New York, for Video Palace.

*OPINION AND ORDER*

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Arclightz and Films Pvt. Ltd. ("Arclightz") and Enzo Pictures Ltd. ("Enzo"), respectively the producer and distributor of the Indian motion picture Asoka, have asserted that Video Palace Inc. and Muhammad Pervez, individually and d/b/a "Video Palace" (collectively, "Video Palace"), infringed their rights by duplicating, renting and selling unauthorized copies of Asoka.[1] On June 2, 2003, this Court granted summary judgment to the plaintiffs against Video Palace.[2] Plaintiffs now seek recovery from Video Palace for statutory damages pursuant to the Copyright Act, 17 U.S.C. § 504, and attorney's fees and costs pursuant to 17 U.S.C. § 505.

1. *See* Second Amended Verified Complaint ("Compl.").

2. *Arclightz and Films Pvt. Ltd. v. Video Palace Inc.*, 67 U.S.P.Q.2d 1152 (S.D.N.Y.2003).

3. The following facts are undisputed, unless otherwise indicated.

4. *See* Compl. ¶¶ 5–6.

5. *See* Distribution Agreement, Ex. 3 to 3/24/03 Declaration of Pramod S. Maniar, director of Asoka.

6. *See* Compl. ¶ 10.

## II. FACTS[3]

### A. The Parties

Arclightz, an Indian corporation in the business of producing and distributing motion pictures, is the producer of Asoka.[4] Pursuant to a "Distribution Agreement" between Arclightz and Enzo, executed on October 5, 2001, Enzo (a British corporation) has an exclusive license "to commercially distribute, exhibit, market, advertise, publicize, derive revenue from and otherwise exploit" the film in all formats worldwide except in India, Bhutan, Nepal, and Bangladesh, where Arclightz retained the local rights.[5]

Video Palace Inc. is a New York corporation engaged in the wholesale and retail sales of music and motion pictures.[6] Muhammad Pervez is the sole proprietor of Video Palace.[7]

### B. The Piracy

Asoka was released theatrically in the United States on October 26, 2001.[8] Authorized Asoka DVDs were not slated for release until February 2002.[9] However, between October 27, 2001, and November 14, 2001, an investigator employed by plaintiffs entered Video Palace Inc. and purchased one unauthorized copy of Asoka on DVD and one on VHS.[10] At that time,

7. *See id.* ¶ 11.

8. *See id.* ¶ 29.

9. *See* 1/28/03 Statement of Undisputed Facts in Support of Plaintiffs' Motion for Summary Judgment and Sanctions Against Cinram International Inc.; Cinram Video·Centre; and the Amazing Video Centre under Local Rule 56.1 ("Pl. 56.1 Stmt. (Cinram)") ¶ 5.

10. *See* 7/21/03 Declaration of Megha Bhouraskar, counsel for plaintiffs, in Support of Plaintiffs' Motion for Statutory Damages, Attorneys Fees and Costs Against Video Palace, Inc.; "M. Pervez", Individually and D/B/A

the film was only available for viewing in theaters.[11] On November 21, 2001, under the supervision of the United States Marshal's Service, plaintiffs' representatives entered Video Palace Inc. and seized 21 VHS copies and 10 DVD covers of Asoka (the actual DVDs having been rented at the time of the seizure).[12] Plaintiffs also found over forty video copying machines on the second floor of the store.[13] Caught red-handed, Video Palace concedes liability for infringing the Asoka copyright.[14]

### C. The Litigation

Plaintiffs filed a Verified Complaint against Video Palace in this Court on November 16, 2001.[15] On the same day, plaintiffs applied for and were granted an Ex Parte Order of Seizure and Preliminary Injunction (the "Order").[16] On execution of the Order, Video Palace provided plaintiffs a list of customers who had rented and were in possession of the DVD copies of Asoka.[17] On December 12, 2001, Video Palace entered into a Stipulation and Order consenting to a preliminary injunction against further infringing use of Asoka.[18] Video Palace now consents to entry of a permanent injunction.[19] Video

Palace never responded to the Verified Complaint, and has never responded to plaintiffs' discovery requests.[20] Both plaintiffs and Video Palace claim to have pursued settlement diligently.[21] Although it is unclear when plaintiffs and Video Palace reached an impasse in their settlement negotiations, the record shows that Video Palace offered $2,500 to plaintiffs on April 2, 2002.[22] The records of plaintiffs' counsel suggest that, on December 5, 2001, Video Palace's offer stood at $3,000 and plaintiffs asked for $25,000.[23] In any event, the suit did not settle, and this Court entered summary judgment for plaintiffs against Video Palace on June 2, 2003.[24]

### III. LEGAL STANDARD

Under the Copyright Act of 1976, a prevailing plaintiff is entitled, upon request, to statutory damages in lieu of actual damages and profits, "in a sum of not less than $750 or more than $30,000 as the court considers just."[25] When the plaintiff proves that the infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum

"Video Palace" ("Bhouraskar Damages Decl.") ¶ 7.

11. *See* Pl. 56.1 Stmt. (Cinram) ¶ 5.

12. *See* Bhouraskar Damages Decl. ¶ 10.

13. *See id.* ¶ 12.

14. *See* 2/26/03 Declaration of Gerald J. McMahon, counsel to Video Palace, conceding liability ("McMahon Decl.") ¶ 3.

15. *See* Bhouraskar Damages Decl. ¶ 15.

16. *See id.* ¶ 8.

17. *See id.* ¶ 11.

18. *See* 12/12/03 Stipulation and Order, Ex. H to Bhouraskar Damages Decl.

19. *See* McMahon Decl. ¶ 8.

20. *See* Bhouraskar Damages Decl. ¶¶ 16–17.

21. *See id.* ¶¶ 18–19.

22. *See* 4/2/03 Letter from McMahon to Magistrate Judge Eaton ("Letter to Judge Eaton"), Ex. A to McMahon Decl.; at ¶ 2.

23. *See* 7/11/03 "Invoice submitted to: Arclights [sic] and Films" (the "Fee Invoice"), Ex. K to Bhouraskar Damages Decl., p. 3.

24. *See Arclightz,* 67 U.S.P.Q.2d at 1160.

25. 17 U.S.C. § 504(c)(1).

of not more than $150,000."[26] Additionally, any prevailing party may be awarded costs, including reasonable attorney's fees, at the discretion of the District Court.[27]

## IV. DISCUSSION

### A. Statutory Damages

Plaintiffs request statutory damages in the amount of $300,000, claiming the maximum statutory award ($150,000) for "2 infringing uses—copying/reproducing VHS copies—and, distributing—renting and selling VHS and DVD copies".[28] Video Palace requests that damages be set at the statutory minimum of $750 for a single infringing use.[29] Two issues arise: (1) whether Video Palace's actions amount to one infringement or two, and (2) the level of damages to be awarded.

### 1. Number of Infringing Uses

■ Plaintiffs assert that Video Palace is liable for two infringing uses, deeming the production and distribution of Asoka to be two distinct infringements. Under plaintiffs' interpretation, Video Palace would thus potentially be liable for

twice the statutory maximum. This is not the law. An infringer is liable for the number of original works infringed, not for the number or type of copies made. "Under the current version of the [Copyright Act], the unit of damages inquiry shifts from the number of infringements to the number of works infringed upon. To determine the number of violations, therefore, the court need only sum the number of separate, individual works which were the subject of a defendant's infringing activities."[30] Only one work, Asoka, was infringed by Video Palace; thus, Video Palace is liable for only one act of infringement, resulting in a maximum of $150,000 in statutory damages.

### 2. Quantum of Damages

#### a. Willfulness

■ Plaintiffs demand maximum statutory damages for willful infringement.[31] In determining an award of statutory damages, a court must first address the question of willfulness.[32] To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it

---

**26.** *Id.* § 504(c)(2).

**27.** *Id.* § 505.

**28.** *See* 7/21/03 Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Statutory Damages, Attorney Fees and Costs Against Video Palace Inc.; "M. Pervez", Individually and D/B/A "Video Palace" ("Pl. Mem.") at 16.

**29.** *See* 8/5/03 McMahon Declaration ("McMahon Opp. Decl.") ¶ 4. *See also* 17 U.S.C. § 504.

**30.** *Antenna Television, A.E. v. Aegean Video, Inc.,* No. 95–CV–2328, 1996 WL 298252, 1996 WL 298252, at *11 (E.D.N.Y. Apr. 23, 1996).

**31.** *See* Pl. Mem. at 16; 17 U.S.C. § 504.

**32.** *See, e.g., National Football League v. Prime-Time 24 Joint Venture,* 131 F.Supp.2d 458, 475 (S.D.N.Y.2001) ("The initial issue in assessing statutory damages is whether Prime-Time's infringement was 'willfull,' justifying an enhanced statutory damage award up to [$150,000], or whether it was 'innocent,' justifying a reduced award of as little as $200 per infringement."); *Arthur A. Kaplan Co. v. Panaria Int'l Inc.,* 48 U.S.P.Q.2d 1315, 1317 (S.D.N.Y.1998) ("The initial determination to be made in assessing statutory damages is whether the infringement was willfull."); *United States Media Corp. v. Edde Entm't Corp.,* No. 94 Civ. 4849, 1998 WL 401532 at *18 (S.D.N.Y. July 17, 1998) ("Because the amount of statutory damages may be substantially affected by whether the defendant acted willfully, we first address that question.").

was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights.[33]

In this case, Video Palace openly rented and sold unauthorized copies of Asoka, clearly had the capacity to copy videocassettes, and failed to display any copyright notice or acknowledgment of plaintiffs' rights on the infringing material.[34] Accordingly, I find that Video Palace's infringement was willful. However, the Court retains broad discretion to award damages from $750 to $150,000 per infringement.[35]

### b. Level of Statutory Damages

▮▮▮▮ District courts "have broad discretion in setting the amount of statutory damages within the minimum and maximum amounts prescribed by the Copyright Act."[36] Many factors influence an award of statutory damages for copyright infringement, including the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, the deterrent effect, if any, that such an award will have on the defendant and on third parties, the cooperation of the defendant in providing evidence concerning the value of the infringing material, the defendant's state of mind and the conduct and attitudes of the parties.[37]

---

**33.** *See UMG Recordings, Inc. v. MP3.Com Inc.*, No. 00 Civ. 0472, 2000 WL 1262568, 2000 WL 1262568, at \*4 (S.D.N.Y. Sept. 6, 2000) (" '[W]illfullness' in the context of statutory damages for copyright infringement means that the infringer either had actual knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights."). *See also Hamil America, Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir.1999) (" 'The standard is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility.' "); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010–11 (2d Cir.1995) (" 'Reckless disregard of the copyright holder's rights ... suffices to warrant award of the enhanced damages.' "); *N.A.S. Import, Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252 (2d Cir.1992); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir.1986); *Antenna Television*, 1996 WL 298252 at \*10; *Dumas v. Dagl*, No. 88 Civ. 2293, 1990 WL 258343, at \*4 (S.D.N.Y. May 22, 1990) ("Proof of actual knowledge or maliciousness is not required, and constructive knowledge is enough.").

**34.** *See* Pl. Mem. at 11 ("However, in this case the Retail Store Defendants cannot claim to be 'innocent': (i) they purchased, displayed and sold or rented DVD copies of Plaintiffs' film while it was still showing in the theatres and before Plaintiffs had released their Film on DVD format; (ii) they copied and had more than adequate facilities to copy (over 40 video copying machines) VHS tapes of the Film; and, (iii) the covers on the VHS tapes and the DVD discs made no mention of copyrights, warnings or Plaintiffs' name.").

**35.** *See* 17 U.S.C. § 504(c)(2).

**36.** *National Football League*, 131 F.Supp.2d at 472. *See also Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345–46, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (" 'the court in its discretion' may, within limits, increase or decrease the amount of the statutory damages"); *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231–33, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *DC Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 34 (2d Cir.1990) (" 'Within these [statutory maxima and minima] limitations the [district] Court's discretion and sense of justice are controlling ...' "); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir.1986) (referring to "the wide discretion the Copyright Act affords the trial court in setting the amount of statutory damages").

**37.** *See, e.g., National Football League*, 131 F.Supp.2d at 473–74 ("In awarding statutory damages, the courts may consider, among other factors, the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, the deterrent effect on the defendant and third parties, the defendant's cooperation in providing evidence concerning the value of the infringing material, and the conduct and attitude of the parties."); *Getaped.Com, Inc. v. Cangemi*, 188 F.Supp.2d 398, 403 (S.D.N.Y.2002) ("Factors considered

There is no justification here for an award of the statutory maximum. Video Palace readily conceded liability and offered plaintiffs a settlement probably in excess of the actual profits it received.[38] Furthermore, Video Palace's business is small and its revenue limited, especially in comparison to the size of the business operated by plaintiffs.[39] Such considerations are valid in adjusting the weight of statutory damages.[40] In this case, the deterrence goal of the statutory damages provision will be amply served by requiring Video Palace to pay plaintiffs' reasonable attorney's fees and costs, in addition to a small award of statutory damages. I therefore award plaintiffs statutory damages in the amount of $750 for Video Palace's infringement of a single work, Asoka.

## B. Attorney's Fees

### 1. Legal Standard

The Copyright Act provides in relevant part that in any copyright infringement action, the court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs."[41] The Supreme Court has held that attorney's fees should be equally available to prevailing plaintiffs and prevailing defendants.[42] Attorney's fees should be awarded to the prevailing party, not "as a matter of course," but "only as a matter of the court's discretion."[43] In *Fogerty v. Fantasy, Inc.*, the Supreme Court highlighted a list of non-exclusive factors that guide the district court's exercise of discretion in awarding fees, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[44] However, "such factors may be used only 'so long as [they] are faithful to the purposes of the Copyright Act.'"[45] The primary objective of the Copyright Act is to "encourage the production of original literary, artistic, and musical expression for the good of the public."[46] This objective

relevant to determining an appropriate statutory damages award include the 'expenses saved and profits reaped by the infringers,' the revenues lost by the plaintiff, the infringers' state of mind (wilful, knowing or merely innocent), the value of the copyright and the deterrent effect on both the defendant and others. 'Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy of discouraging wrongful conduct.' ") (citations omitted).

**38.** See McMahon Decl. ¶ 3; Letter to Judge Eaton ¶ 2.

**39.** See Letter to Judge Eaton ¶ 2.

**40.** See Warner Bros., Inc. v. Dae Rim Trading, Inc., 677 F.Supp. 740, 770 (S.D.N.Y.1988) (awarding minimum statutory damages) ("Therefore, in the exercise of discretion, the amount of statutory damages is reduced to $100. In so doing, note is taken of the small size of the Dae Rim business, the relatively small amounts involved, the large revenues and resources of Warner, the substantial profits made by Warner from its licensing of the copyrights, as well as from the film itself, the good faith of defendants in defending the litigation, and their early consent to reasonable relief for plaintiff.").

**41.** 17 U.S.C. § 505.

**42.** See Fogerty v. Fantasy, Inc., 510 U.S. 517, 533, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

**43.** Id. at 533–34, 114 S.Ct. 1023.

**44.** Id. at 533 n. 19, 114 S.Ct. 1023 (quoting Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir.1986)).

**45.** Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 120–21 (2d Cir.2001) (quoting Fogerty, 510 U.S. at 534, 114 S.Ct. 1023).

**46.** Fogerty, 510 U.S. at 524, 114 S.Ct. 1023.

is promoted by discouraging infringement as well as by the successful defense of copyright infringement actions.[47]

■■■ In assessing the proper amount of fees, courts evaluate the amount of work, the skill involved and the results achieved.[48] In addition, the fee application must be supported by contemporaneous time records that specify, by attorney, the date, the hours expended, and the nature of the work done.[49]

## 2. Analysis

■■■ I have reviewed the time records for plaintiffs' attorneys as reflected in the Fee Invoice. I have also reviewed the hourly rates charged by plaintiffs' attorneys.[50] Four individuals' time is reflected in the Fee Invoice: Megha Bhouraskar, partner, billed 55.52 hours at $350.00 per hour; William M. Poppe, partner, billed 0.85 hours at $375.00 per hour; Kyona Watts, presumably an associate, billed 10.72 hours at $100.00 per hour; and Dean Threadgill, billed 5.20 hours at $25.00 per hour, for a total of $20,952.75 claimed in attorney's fees.[51] In reviewing these records, I note that plaintiffs' counsel, Poppe & Bhouraskar, LLP, specializes in copyright, trademark and entertainment law.[52] Thus, there is little chance that any of the time spent represents start-up time to obtain expertise in copyright law. I conclude that the hourly rates charged for the attorneys' time are reasonable.

■■■ However, certain of the itemized fees sought by plaintiffs do not seem fairly attributable to preparation of plaintiffs' case against Video Palace, as opposed to preparation of plaintiffs' case against Cinram International, Inc. and Cinram Video Centre (the "Cinram defendants"). Because this Court entered summary judgment for the Cinram defendants on June 2, 2003, plaintiffs are not entitled to fees incurred in pursuing the action against those defendants.[53] Specifically, various charges for mailing warning letters, general legal research and telephone calls to the Copyright office and to clients regarding possible infringement and other anti-piracy issues may be fairly apportioned to either Video Palace or the Cinram defendants, and will accordingly be reduced by half.[54]

47. *See id.* at 526, 114 S.Ct. 1023.

48. *See N.A.S. Import, Corp.,* 968 F.2d at 254.

49. *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.,* 919 F.Supp. 656, 661 (S.D.N.Y. 1996).

50. *See* Bhouraskar Damages Decl. ¶ 21.

51. *See id.;* Fee Invoice.

52. *See* Description of Poppe & Bhouraskar LLP, Ex. J to Bhouraskar Damages Decl.

53. *See* 17 U.S.C. § 505 ("the court may also award a reasonable attorney's fee to the *prevailing* party") (emphasis added).

54. *See* Fee Invoice. In particular, the following charges reflected in the Fee Invoice do *not seem solely or primarily attributable to* Video Palace: p. 1, charges 1–3, reflecting 1.47 hours billed by Kyona Watts for Administrative Time and Legal Research spent mailing warning letters and preparing for a national conference; p. 1, charge 5 and charges 9–12, reflecting 1.35 hours billed by Megha Bhouraskar for Telephone Conferences with the Copyright Office, plaintiffs' client Mark Burton and plaintiffs' investigator Mehta, regarding such general issues as plaintiffs' registration of their copyright, "anti-piracy efforts", "Canada RCMP/customs" and "IFPI Code"; p. 2, charge 9, reflecting 0.20 hours billed by Dean Threadgill for a Telephone Conference with the Copyright Office expediting acquisition of a copyright certificate; and p. 4, charges 10 and 12, reflecting 0.35 hours billed by Megha Bhouraskar for Office Conferences regarding "amending both complaints to include Replicator" and "regarding Investigator regarding replicators; Answers due on Complaints; Default letter on Answers". The total reduction in attorney's fees awarded thus amounts to $467.25.

Thus, plaintiffs are awarded $20,485.50 in attorney's fees.

## C. Costs

 The Copyright Act allows the District Court, in its discretion, to award costs.[55] The Court may also rely on Rule 54(d) of the Federal Rules of Civil Procedure, which state that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."[56] The categories of costs allowable under the Copyright Act and Rule 54 are the same.[57] Traditionally, "although not required to do so, courts routinely award costs to the prevailing party in copyright cases."[58] In this case, the costs claimed by plaintiffs are not excessive and, with few exceptions, occurred prior to or in connection with the seizure, and therefore could not reasonably have been avoided.[59] However, plaintiffs' accounting seems to be in error with respect to one item, the 'Filing Fees—US Marshall [sic]', under which they claim an expenditure of $1000.[60] According to the actual United States Marshals Report, while plaintiffs tendered an advance deposit of $1000, the Marshals refunded $682.76 of that deposit.[61] Accordingly, plaintiffs are awarded $1,765.77 in costs.

## V. CONCLUSION

Plaintiffs' motion for statutory damages, attorney's fees and costs is granted. Video Palace is liable for $750 in statutory damages, $20,485.50 as a reasonable attorney's fee and $1,765.77 in payment of plaintiffs' costs, for a total of $22,251.77.

**55.** 17 U.S.C. § 505

**56.** Fed.R.Civ.P. 54(d).

**57.** *National Football League*, 131 F.Supp.2d at 484. *See also United States Media Corp.*, 1999 WL 498216 at *7 ("The weight of authority indicates that the 'full costs' referred to in the Copyright Act are nothing more than the costs allowable under 28 U.S.C. § 1920."); *In Design v. K–Mart Apparel Corp.*, No. 87 Civ. 8397, 1996 WL 4122, at *7 (S.D.N.Y. Jan. 3, 1996); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F.Supp. 361, 366–67 (D.Mass.1993) ("28 U.S.C. § 1920 defines the 'costs' that may be award-

ed under more general authority, such as ... Fed.R.Civ.P. 54 and, in this case, § 505 of the Copyright Act."), *aff'd*, 36 F.3d 1147 (1st Cir. 1994).

**58.** *National Football League*, 131 F.Supp.2d at 484 (quoting *Antenna Television*, 1996 WL 298252 at *14).

**59.** *See* Fee Invoice at 5.

**60.** *Id.*

**61.** *See* United States Marshals Service Report and Return, filed 11/16/01, Ex. F to Bhouraskar Damages Decl.